133 N.J. Super. 226 (1975)
336 A.2d 35
COOPER RIVER CONVALESCENT CENTER, INC., APPELLANT,
v.
WILLIAM J. DOUGHERTY, ACTING COMMISSIONER, N.J. STATE DEPARTMENT OF HEALTH, HEALTH CARE ADMINISTRATION BOARD OF THE DEPARTMENT OF HEALTH, STATE OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 3, 1975.
Decided March 19, 1975.
*228 Before Judges LEONARD, SEIDMAN and BISCHOFF.
Mr. John W. Devlin argued the cause for appellant.
Ms. Jane Sommer, Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney General of New Jersey, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by BISCHOFF, J.A.D.
This is an appeal from a decision of the Health Care Administration Board (HCAB) denying an application for a certificate of need (pursuant to N.J.S.A. 26:2H-1 et seq.) to enable appellant to construct 66 skilled or intermediate nursing home beds. The following abbreviated procedural history is sufficient for purposes of this appeal.
Appellant submitted its application on July 26, 1972, for a certificate of need to construct 66 skilled care nursing home beds, thereby expanding its 108-bed facility to 174 beds. This application was amended to include an alternative request for the issuance of a certificate of need for construction of 66 intermediate care beds, should there be no *229 need for skilled beds in the area. Appellant's application was forwarded to the Review Committee of the State Health Planning Council (SHPC), the coordinating agency which considers applications for certificates of need under the act (N.J.S.A. 26:2H-3). This Review Committee recommended to the SHPC that appellant's application be denied because the 1971 State Plan indicated that the region where appellant's facility is located was overbuilt by 203 beds, and the inventory for the 1972 State Plan, not yet adopted, also indicated that the region was overbuilt by approximately 200 beds. The SHPC on October 27, 1972 adopted the recommendations of the Review Committee and appellant was informed on November 15, 1972 that the Department of Health was recommending to the HCAB that appellant's application for a certificate of need for "the addition of 66 ECF [extended care facility] beds to the existing 108 bed nursing home facility" be denied. By letter dated March 16, 1973 the Commissioner of Health explained to appellant that the denial was intended to apply to its application for both skilled care beds and intermediate care beds, saying:
* * * the designation of long term care beds was applied equally to both skilled nursing (ECF) and intermediate care (ICF) with no differentiation at the time the project application was reviewed. Thus, since the denial reason stated that the region was overbuilt by 203 beds it make no difference as to whether the proposed beds were specified as skilled nursing (ECF) or intermediate care.
We digress to point out that the distinction between a skilled care facility (ECF) and an intermediate care facility (ICF) is in the level of nursing care provided. The required hours of skilled nursing services are not as high for intermediate care as for skilled care. The amount of time required in attendance in each category is established by regulations developed by federal agencies in connection with the Hill-Burton Program, 42 U.S.C.A. § 291 et seq.
The 1971 State Plan did not include an inventory of need for intermediate care because the federal requirements for *230 intermediate care had not then been established. However, an inventory of need for intermediate care was included in the 1973 State Plan for purposes of advance planning. On June 7, 1973 the 1973 State Plan became effective and indicated a need for 383 intermediate care beds and an excess of skilled care beds in a newly defined area which included appellant's facility. However, this same 1973 State Plan imposed a moratorium on the issuance of certificates of need for the construction of intermediate care facilities. The expressed theory was to fill intermediate care requirements by encouraging licensed skilled care facilities to become intermediate care facilities and thus attempt to reach a balance between requirements and available facilities of all types. This limited moratorium expired June 30, 1973, and was replaced by an expanded moratorium on the issuance of certificates of need for all facilities effective August 31, 1973. This moratorium, extended several times, expired January 31, 1975, about which more will be said later.
Plaintiff requested a hearing, pursuant to N.J.S.A. 26: 2H-9, which was held July 18 and September 12, 1973, at the conclusion of which the hearing officer made the following pertinent findings:
(1) plaintiff's application was to be judged by the 1971 State Plan, in effect when the application was filed;
(2) the 1971 State Plan did not make a determination of the need for intermediate care facilities. Such a determination is required by N.J.S.A. 26:2H-8;
(3) appellant never received a proper decision on his alternative application for a certificate of need for intermediate care facilities;
(4) the 1973 State Plan shows a need for 383 intermediate care facility beds in appellant's area;
(5) a moratorium has been imposed on applications for intermediate care facilities, but appellant should be issued a certificate of need because there is a need and appellant's application was filed before the moratorium was imposed.
The hearing officer recommended to the HCAB that the denial by SHPC of plaintiff's application for a certificate of need should be upheld insofar as it applied to skilled *231 nursing facilities, but that a certificate of need should be granted for 66 beds of intermediate care facilities.
The HCAB rejected this recommendation and, instead, followed the recommendation of the Commissioner and denied plaintiff's application. This appeal followed.
On application by respondent, the matter was remanded so the HCAB could make a "determination and findings." The HCAB considered the matter on January 29, 1974 and June 25, 1974, following which it denied the application for the reason that the 1971 State Plan indicated no need for long-term facilities in appellant's region. As stated above, this Plan inventoried only skilled care facilities and did not mention intermediate care facilities.
We first consider appellant's contention that the HCAB lacked authority to promulgate the so-called moratorium. On August 9, 1973 the Commissioner, with the approval of the Board, adopted the following rule:

PROPOSED POLICY ON SKILLED NURSING AND INTERMEDIATE CARE BEDS * * *
Effective immediately and until March 31, 1974, certificates of need shall not be issued to Health Care Facilities requesting additional skilled nursing or intermediate care beds, or proposing to construct new facilities to accommodate skilled nursing or intermediate care beds. [5 N.J. Reg. 262 (August 9, 1973)]
This rule, sometimes referred to as a "moratorium," first appeared in the 1973 State Plan as a regulation of the respondent on June 7, 1973 (5 N.J. Reg. 223  July 5, 1973) and by extension continued in effect until January 31, 1975.
The Health Care Facilities Planning Act, N.J.S.A. 26:2H-1 et seq., establishes a comprehensive plan to carry out the stated public policy that "hospital and related health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health." N.J.S.A. 26:2H-1. To that end the Commissioner, with the approval of the HCAB, is given power to adopt regulations concerning the licensing of health care facilities. N.J.S.A. 26: *232 2H-5(b). The act sets forth specific criteria to guide the agency in the issuance of certificates of need. N.J.S.A. 26:2H-8.
Such an act should be liberally construed to enable the agency to achieve the task assigned to it, and the courts should imply, where necessary, incidental powers necessary to achieve the legislative scheme. Allendate Field and Stream Ass'n v. Legalized Games, 41 N.J. 209, 217 (1963); New Jersey State AFL-CIO v. Bryant, 55 N.J. 171, 176 (1969). Unless an administrative regulation is clearly ultra vires on its face, the person attacking it must overcome a strong presumption of validity. Motyka v. McCorkle, 58 N.J. 165, 181 (1971); Cole Nat. Corp. v. State Bd. of Examiners, 57 N.J. 227, 231 (1970).
We hold that the Commissioner had the power to impose a moratorium on the issuance of certificates of need for the construction of skilled or intermediate care beds. By doing so he was furthering the legislative objective of properly utilizing health care services. The 1973 State Plan showed an excess of skilled nursing home beds and an insufficient number of intermediate care beds. A rational planning approach to this situation is to halt the construction of additional facilities and encourage the conversion of skilled nursing home beds to intermediate care beds.
Appellant argues that the regulation is irrational because there is a need for intermediate care beds, but this argument misses the point and overlooks the reason behind the moratorium.
In short, the moratorium is within the power of the Commissioner and the HCAB. Appellant has failed to overcome the strong presumption of validity attaching to the regulation.
Appellant next contends that assuming, arguendo, the existence of a valid moratorium, it should not be applied to it because appellant's application was filed before the moratorium went into effect.
*233 In Merry Heart Nurs. and Conv. Home v. Dougherty, 131 N.J. Super. 412 (App. Div. 1974), this court decided that an application for a certificate of need should be viewed in light of the facts existing at the time the application is considered, rather than the facts existing at the time the application was filed. The rationale was that this approach would best serve the legislative intent. Id. at 419. The same rationale applies in the instant case. Appellant's application was considered by the HCAB as late as June 1974, well beyond the effective date of the moratorium. Its existence was an effective bar to the approval of appellant's application.
Appellant contends that it was denied equal protection because a certificate of need was granted to St. Joseph's Home for the Blind permitting it to reclassify 20 sheltered beds to skilled nursing beds while the moratorium was in effect. This contention is without merit.
This issue is raised for the first time on appeal, is not supported by the record and, therefore, is not properly before us. Moreover, it appears that the facility in question is the only one in the State devoted exclusively to serving the elderly blind. We find there is a rational basis for the different treatment accorded the two facilities. Trap Rock Industries, Inc. v. Kohl, 63 N.J. 1, 5, cert. den. 414 U.S. 860, 94 S.Ct. 74, 38 L.Ed.2d 110 (1973); New Jersey Chapt., Am. J.P. v. N.J. State Bd. of Prof. Planners, 48 N.J. 581, 601-603 (1967).
A consideration of the present status of the moratorium is necessary. It was extended by regulation effective November 19, 1974, 6 N.J. Reg. 472(c) to January 31, 1975, and we were informed at oral argument that it has been permitted to lapse. Further, the present policy of planning for long-term care no longer involves the establishment of different categories for skilled nursing and intermediate care facilities. See 6 N.J. Reg. 472(a) and 7 N.J. Reg. 55(b).
*234 While the HCAB properly refused to issue a certificate of need to appellant, it does not follow that it was proper to deny it. No doubt appellant could refile its application, but such procedure would place it at the end of the line of those seeking certificates of need. Principles of fundamental fairness dictate that during the pending moratorium actions on applications for certificates of need otherwise in order should be withheld until the situation with respect to the need for beds is clarified. Appellant had a priority status resulting from its filing date which should be recognized.
We reverse the order of the HCAB denying appellant's application and remand the matter to the HCAB for reconsideration in accordance with the principles herein expressed. We further direct that appellant's priority status be recognized and that its application be acted upon before those applications with a later filing date.