639 A.2d 1129

MONMOUTH MEDICAL CENTER, PLAINTIFF–APPELLANT, v. STATE DEPARTMENT OF HEALTH, BRUCE SIEGEL, AS THE STATE COMMISSIONER OF HEALTH, AND HEALTH CARE ADMINISTRATION BOARD, DEFENDANTS–RESPONDENTS.

MONMOUTH MEDICAL CENTER, APPELLANT, v. STATE DEPARTMENT OF HEALTH, BRUCE SIEGEL, AS THE STATE COMMISSIONER OF HEALTH, AND HEALTH CARE ADMINISTRATION BOARD, RESPONDENTS.

SOMERSET MEDICAL CENTER, PLAINTIFF–APPELLANT, v. STATE DEPARTMENT OF HEALTH, BRUCE SIEGEL, AS THE STATE COMMISSIONER OF HEALTH, AND HEALTH CARE ADMINISTRATION BOARD, DEFENDANTS–RESPONDENTS.

SOMERSET MEDICAL CENTER, APPELLANT, v. STATE DEPARTMENT OF HEALTH, BRUCE SIEGEL, AS THE STATE COMMISSIONER OF HEALTH, AND HEALTH CARE ADMINISTRATION BOARD, RESPONDENTS.

IN RE APPLICATION OF ENGLEWOOD HOSPITAL AND MEDICAL CENTER FOR A CERTIFICATE OF NEED FOR A CARDIAC SURGERY PROGRAM.

Superior Court of New Jersey
Appellate Division

Argued January 19, 1994—Decided March 31, 1994.

298 

300

Before Judges SKILLMAN, KESTIN and WEFING.

*Frank R. Ciesla* argued the cause for appellant Monmouth Medical Center in A–1297–93T1 and A–1548–93T1 (*Giordano, Halleran & Ciesla,* attorneys; *Mr. Ciesla,* of counsel; *Elizabeth Dusaniwskyj* and *James L. Petsche,* on the briefs).

*Charles A. Reid, III* argued the cause for appellant Somerset Medical Center in A–1296–93T1 and A–1540–93T1 (*Shanley & Fisher,* attorneys; *Mr. Reid, Kathleen B. Harden* and *Richard J. Warren,* on the briefs).

*James M. Hirschhorn* argued the cause for appellant Englewood Hospital and Medical Center in A–4496–92T1 (*Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross,* attorneys; *Mr. Hirschhorn,* of counsel; *Mr. Hirschhorn* and *Richard S. Schkolnick,* on the brief).

*Donald M. Palombi,* Deputy Attorney General, argued the cause for respondent State of New Jersey, Department of Health (*Deborah T. Poritz,* Attorney General, attorney; *Joseph L. Yannotti,* Assistant Attorney General, of counsel; *Mr. Palombi,* on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

These appeals involve the validity of the Department of Health's recently adopted regulations which impose moratoria upon the consideration of certificate of need applications for cardiac services pending the completion of studies relating to the need for those services. Appellants are hospitals which filed certificate of need applications for cardiac services that are now subject to these moratoria.

Englewood Hospital and Medical Center (Englewood) filed a certificate of need application on March 1, 1993 for a cardiac surgery program. The Department returned this application to Englewood by a letter dated May 11, 1993, which stated that the application would not be accepted for processing because the Department had not identified a need for additional cardiac sur-

gery services. Englewood filed a notice of appeal challenging the Department's refusal to process its application. During the pendency of Englewood's appeal, the Department adopted the challenged regulations which, among other things, formalize the Department's policy decision not to process certificate of need applications for additional cardiac surgery services pending the completion of studies relating to the need for those services.

Somerset Medical Center (Somerset) and Monmouth Medical Center (Monmouth) filed certificate of need applications to initiate cardiac catheterization services on July 29 and August 1, 1991. Shortly thereafter, the Department adopted an emergency rule imposing a moratorium on the processing of certificate of need applications pending adoption of the State Health Plan. 23 *N.J.R.* 3512 (Nov. 18, 1991). Although this moratorium expired on December 31, 1992, see *id.* at 3514, the Department continued after that date to defer action upon Somerset's and Monmouth's certificate of need applications. On September 1, 1993, the Department issued a "call" [1] which invited certificate of need applications for the expansion of existing cardiac catheterization services but not for the establishment of new facilities to perform this service. Around the same time, the Department proposed the adoption of the regulations which are the subject of these appeals. 25 *N.J.R.* 3712 (Aug. 16, 1993). Mirroring the call for certificate of need applications, these proposed regulations authorized the processing of applications for the expansion of existing cardiac catheterization facilities but imposed a moratorium on processing applications for new facilities.

---

[1] On August 13, 1993, the Department adopted new procedural regulations to govern its consideration of certificate of need applications. *N.J.A.C.* 8:33–1.1 to –6.2. These regulations include a provision that certificate of need applications will only be considered "upon notice by the Commissioner inviting ... applications for specific services." *N.J.A.C.* 8:33–4.1(a). Such an invitation is commonly referred to as a "call" for certificate of need applications and must identify, among other things, "the needed service(s), proposed geographic area(s) to be served, [and] the date the application is due." *Ibid.*

In October 1993, Somerset and Monmouth filed separate actions in lieu of prerogative writs seeking to enjoin the Department from adopting the proposed regulations and to compel the Department to process their certificate of need applications. The Law Division transferred these actions to this court pursuant to *Rule* 1:13–4.

Somerset and Monmouth then filed emergent applications to stay the adoption of the Department's proposed regulations, to enjoin the Department from reviewing any new applications for the expansion of existing cardiac catheterization services until it completed processing Somerset's and Monmouth's pending applications, and to compel the Department to process their applications. We denied the applications for emergent relief, but accelerated the appeals.

Subsequent to our denial of emergent relief, the Department adopted the proposed regulations, effective December 20, 1993, 25 *N.J.R.* 6019 (Dec. 20, 1993), which include the moratorium upon the processing of certificate of need applications for the establishment of new cardiac catheterization facilities. Somerset and Monmouth filed notices of appeal challenging those regulations, which we subsequently consolidated with their appeals challenging the Department's alleged inaction with respect to their 1991 certificate of need applications. We now consolidate both Somerset and Monmouth appeals and the Englewood appeal for purposes of this opinion.

The challenged regulations, *N.J.A.C.* 8:33E–1.1 to –1.13 and *N.J.A.C.* 8:33E–2.1 to –2.15, provide standards for cardiac diagnostic facilities and cardiac surgery centers. Sections 1.12 and 2.13, entitled "New facilities," are reserved. Sections 1.13 and 2.15, entitled "Submission of Certificate of Need Applications," provide that the Department will only process certificate of need applications for the expansion of existing cardiac catheterization facilities in certain regions. The regulations also refer issues relating to the establishment of new facilities to the recently established Cardiovascular Health Advisory Panel (CHAP), which is to study

and undertake a comprehensive review of the entire public policy regarding cardiovascular disease. *N.J.A.C.* 8:33E–1.6, –2.6.

Monmouth argues that the part of these regulations which imposes a moratorium on certificate of need applications for the establishment of new cardiac catheterization facilities while allowing such applications for the expansion of existing facilities violates the Health Care Facilities Planning Act (the Act), as amended by chapter 31 of the Laws of 1992, because it implements the goals and objectives of the State Health Plan. In addition, Somerset and Monmouth argue that the moratorium is arbitrary, capricious and unreasonable. Somerset also argues that the regulations should be invalidated because one of the members of the Health Care Administration Board (HCAB), Sister Margaret Straney, had a conflict of interest which barred her from voting upon the proposed regulations. Although Englewood did not file a separate appeal challenging the validity of these regulations, its arguments are substantially the same as those presented by Somerset and Monmouth, namely, that the Department's refusal to process its certificate of need application for a cardiac surgery facility violates chapter 31 by implementing goals and objectives of the State Health Plan and is arbitrary and capricious.

We conclude that the challenged parts of the regulations fall within the Department's rule-making authority and are not arbitrary and capricious. We also conclude that Sister Straney did not have a conflict of interest which precluded her from voting on the regulations. Consequently, we affirm the validity of the regulations. Since the regulations now provide the requisite authorization for the Department's refusal to process appellants' applications for certificates of need, we have no need to decide whether the Department was justified in withholding action on appellants' applications before the regulations were adopted.

I

Monmouth and Englewood argue that because the State Health Plan states that the issuance of certificates of need to expand

cardiac services should be contingent on the development of a regionalized plan for such services, and that preference should be given to existing programs, *N.J.A.C.* 8:100–9.3, the moratorium violates that part of chapter 31 of the Laws of 1992 which prohibits the Department from adopting "any regulation which implements any goals, objectives or any other health planning recommendations that have been included in the State Health Plan." *N.J.S.A* 26:2H–5.8(a).

To place this argument in perspective, it is appropriate to review the evolution of the statutes governing the certificate of need regulatory program leading up to the enactment of chapter 31. On May 10, 1971, the Legislature enacted the Health Care Facilities Planning Act, *L.*1971, *c.* 136; *N.J.S.A.* 26:2H–1 to –26, which confers broad authority upon the Department of Health over health planning. One of the central provisions of the Act is a requirement that "[n]o health care facility shall be constructed or expanded, and no new health care service shall be instituted ... except upon ... receipt of a certificate of need." *N.J.S.A.* 26:2H–7. The Act provides legislative standards to govern the Department's review of applications for certificates of need, *N.J.S.A.* 26:2H–8, and it authorizes the Commissioner of Health to adopt additional "criteria and standards" to govern the issuance of certificates of need. *N.J.S.A.* 26:2H–9. The Act also confers broad general rule-making authority upon the Commissioner and the HCAB. *N.J.S.A.* 26:2H–5(b) provides that "[t]he Commissioner, with the approval of the board, shall adopt and amend rules and regulations ... to effectuate the provision and purposes of this act," and *N.J.S.A.* 26:2H–8(f) provides that this rule-making authority extends to the establishment of "factors" in addition to those set forth in the Act to govern consideration of certificate of need applications.

The courts have interpreted the Department's rule-making authority expansively. *See, e.g., In re Amendment of N.J.A.C. 8:31B–3.31, etc. by State Comm'r of Health,* 119 *N.J.* 531, 575 *A.*2d 481 (1990); *New Jersey Ass'n of Health Care Facilities v. Finley,*

83 *N.J.* 67, 415 *A.*2d 1147, *appeal dismissed, cert. denied,* 449 *U.S.* 944, 101 *S.Ct.* 342, 16 *L.Ed.*2d 208 (1980). Most significantly, this court has held that the Department's rule-making authority extends to the declaration of moratoria upon the consideration of certificate of need applications for particular kinds of health care services. *Cooper River Convalescent Ctr., Inc. v. Dougherty,* 133 *N.J.Super.* 226, 232, 336 *A.*2d 35 (App.Div.1975).

In 1991 the Legislature enacted an amendment to the Act which established a new agency within the Department, called the State Health Planning Board, and directed the Planning Board to prepare a "State Health Plan." *L.*1991, *c.* 187, § 34. This amendment provided that "[t]he State Health Plan shall identify the unmet health care needs in an area by service and location and it shall serve as the basis upon which all certificate of need applications shall be approved." *Ibid.* Pursuant to this legislation, the Planning Board drafted several portions of a proposed State Health Plan, which the Department then adopted as regulations. *N.J.A.C.* 8:100–1.1 to –18.18.

Shortly thereafter, the Legislature amended the Act by enacting chapter 31. This legislation amended *N.J.S.A.* 26:2H–5.8(a) to delete the requirement that the State Health Plan serve as the basis for approval of all certificate of need applications. Instead, chapter 31 provides that the State Health Plan will serve as "an advisory document which may be considered when certificate of need applications are reviewed for approval." *N.J.S.A.* 26:2H–5.8(a). In addition, chapter 31 imposed a restriction upon the Department's authority to adopt regulations, which reads as follows:

> Effective May 15, 1992, notwithstanding any other provision of law to the contrary, neither [the HCAB] or the Department of Health shall adopt any regulation which implements any goals, objectives or any other health planning recommendations that have been included in the State Health Plan prepared by the State Health Planning Board.
>
> [*Ibid.*]

Subsequently, the Attorney General issued an opinion which concluded that the part of chapter 31 that prohibits the Depart-

ment from adopting any regulation "which implements any goals, objectives or any other health planning recommendations that have been included in the State Health Plan" violates the separation of powers and due process provisions of the New Jersey Constitution. After receiving the Attorney General's opinion, the Department adopted regulations prescribing standards for the review of certificate of need applications for certain kinds of health care facilities and services.

The New Jersey Hospital Association filed an appeal challenging the validity of the newly adopted certificate of need regulations on the ground that they were inconsistent with chapter 31. We concluded in *In re Adoption of Regulations Governing the State Health Plan*, 262 *N.J.Super.* 469, 621 *A.2d* 484 (App.Div. 1993), that chapter 31 is constitutional and that the Department's regulations which concededly conflicted with that legislation were invalid. The Supreme Court has recently affirmed this decision. 135 *N.J.* 24, 637 *A.2d* 1246 (1994). Our opinion noted that "to a substantial extent chapter 31 reinstates the provision of the Act which had governed the review of certificate of need applications prior to 1991." 262 *N.J.Super.* at 480, 621 *A.2d* 484. We also stated that chapter 31 made the "specific policy judgments reflected in the State Health Plan ... advisory recommendations rather than binding requirements." *Id.* at 482, 621 *A.2d* 484.

Monmouth argues that the part of the Department's new cardiac service regulations which imposes a temporary moratorium upon consideration of certificate of need applications for the establishment of new cardiac catheterization facilities, while permitting applications for the expansion of existing facilities, implements the part of the State Health Plan which provides that "[p]reference should be given to existing programs that have demonstrated quality care through utilization of its cardiac services." *N.J.A.C.* 8:100–9.3(b). Englewood argues that the part of the regulations which imposes a moratorium upon the consideration of certificate of need applications for cardiac surgery facilities implements those parts of the State Health Plan which state

that the review of the "quality and appropriateness of the cardiac procedures now performed in New Jersey ... shall be linked to future expansion or contraction of the State's cardiac resources," *N.J.A.C.* 8:100–9.3(a), and that "[f]uture certificates of need to expand cardiac services shall be contingent on the development of a regionalized plan." *N.J.A.C.* 8:100–9.3(b).

However, we are convinced that the Legislature did not intend by the enactment of chapter 31 to prohibit the Department from adopting any regulation which corresponds in any respect with any of the numerous views and recommendations contained in the State Health Plan. If chapter 31 were construed that broadly, it could effectively prevent the Department from exercising its rule-making authority and seriously undermine its capacity to discharge its "central, comprehensive responsibility" under the Act "for the development and administration of the State's policy with respect to health planning, hospital and related health care services and health care facility cost containment programs." *N.J.S.A.* 26:2H–1. We are unwilling to ascribe such an intent to the Legislature based upon the vague, general language of chapter 31. *See Fairlawn Shopper, Inc. v. Director, Div. of Taxation,* 98 *N.J.* 64, 74, 484 *A.*2d 659 (1984) ("[S]tatutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.' ") (quoting *Schierstead v. Brigantine,* 29 *N.J.* 220, 230, 148 *A.*2d 591 (1959)). In our view, it is more reasonable to construe chapter 31 as only prohibiting the immediate and direct implementation of the specific health planning decisions set forth in the State Health Plan. *See State Health Plan, supra,* 262 *N.J.Super.* at 486, 621 *A.*2d 484, ("[t]he Department ... retains the authority in reviewing an application for a certificate of need to consider the provisions of the State Health Plan, so long as its provisions are treated as advisory rather than binding.")

There is nothing in chapter 31 which indicates a legislative intent to withdraw the Department's long-standing authority to declare *moratoria* upon the consideration of certificates of need.

Chapter 31 preserves the Department's general rule-making authority under *N.J.S.A.* 26:2H–5(b) and its specific rule-making authority relating to the issuance of certificates of need conferred by *N.J.S.A.* 26:2H–8(f). The only limitation imposed by chapter 31 is that the Department may not use its rule-making authority to implement the State Health Plan. *State Health Plan, supra,* 262 *N.J.Super.* at 486, 621 *A.*2d 484. This limitation cannot reasonably be construed to preclude the Department from imposing moratoria upon the consideration of certificate of need applications, since its authority to impose such moratoria derives from its general rule-making powers, as interpreted in *Cooper River Convalescent Ctr. v. Dougherty, supra,* 133 *N.J.Super.* at 232, 336 *A.*2d 35, rather than the State Health Plan. Consequently, the Department's regulations imposing moratoria on certificate of need applications for cardiac surgery services and for the establishment of new facilities for cardiac catheterization services are within the Department's rule-making authority and do not violate chapter 31 of the Laws of 1992.

## II

Before considering appellants' arguments that the Department's moratoria upon the consideration of certificate of need applications for cardiac services are arbitrary and capricious, we note that appellants do not dispute that the Department adopted the temporary moratoria in full conformity with the Administrative Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15. The APA requires a state agency to give at least thirty days notice of the proposed adoption of a rule or regulation, *N.J.S.A.* 52:14B–4(a)(1), which must be accompanied by a summary of the rule or regulation and an explanation of its purpose and impact. *N.J.S.A.* 52:14B–4(a)(2). In addition, the agency must afford interested parties an "opportunity to submit data, views, or arguments, orally or in writing" regarding the proposed rule or regulation, *N.J.S.A.* 52:14B–4(a)(3), and must publicly distribute a report "providing the agency's

response to the data, views and arguments contained in the submissions." *N.J.S.A.* 52:14B–4(a)(4).

■ The new regulations regarding the consideration of certificates of need for cardiac services, proposed in the August 16, 1993 issue of the New Jersey Register, were introduced by a summary which stated in pertinent part:

> The Department of Health is in the process of reviewing the entire spectrum of public policy regarding cardiovascular disease, with the assistance of the newly formed cardiovascular health advisory panel (CHAP).... The Department is therefore proposing the establishment of interim policies that permit limited expansion of existing invasive cardiac laboratory resources, under carefully structured conditions, which document serious problems regarding access to timely services. The proposed chapter contains sections regarding new cardiac services that will be reserved pending the completion of the Department's policy review. A two year limitation on this chapter is being proposed as assurance that the review will be completed in a timely fashion. The Department's review will include an examination of both the utilization and performance of the State's existing invasive cardiac diagnostic and cardiac surgery resources.

> ... This interim policy permits applicants that document utilization levels greatly exceeding the threshold volume previously contained in these rules to seek relief through the certificate of need process.

> [25 *N.J.R.* 3712–13]

Appellants submitted written comments objecting to the moratoria which these regulations proposed. Somerset and Monmouth also made oral comments at a meeting of the HCAB held on November 18, 1993. The Department published detailed responses to these objections, which are quoted at length hereinafter. Therefore, the Department adopted the moratoria in full conformity with the procedural requirements of the APA, *see Heir v. Degnan*, 82 *N.J.* 109, 118–19, 411 *A.2d* 194 (1980), and appellants challenge the regulations imposing the moratoria solely on substantive grounds.

■ Courts have a "limited role when evaluating the validity of state administrative regulations." *In re Amendment of N.J.A.C. 8:31B–3.31, etc., by State Comm'r of Health, supra,* 119 *N.J.* at 543, 575 *A.2d* 481. "An agency rule or regulation is presumptively valid...." *Medical Soc'y of N.J. v. New Jersey*

*Dep't of Law & Pub. Safety*, 120 *N.J.* 18, 25, 575 *A.*2d 1348 (1990). To overcome this presumption, a party challenging a regulation must show that it is unreasonable. *Bergen Pines County Hosp. v. New Jersey Dep't of Human Servs.*, 96 *N.J.* 456, 477, 476 *A.*2d 784 (1984).

Appellants argue that the Department acted unreasonably by adopting a regulation imposing general moratoria upon certificate of need applications for cardiac services, thereby depriving them of the opportunity to develop an administrative record to show the need for additional services and their ability to satisfy that need. However, an administrative agency ordinarily possesses extremely broad authority in determining whether to act through rule-making or adjudication. *See, e.g., Texter v. Department of Human Servs.*, 88 *N.J.* 376, 382–87, 443 *A.*2d 178 (1982); *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n*, 85 *N.J.* 325, 332–34, 426 *A.*2d 1000, *appeal dismissed,* 454 *U.S.* 804, 102 *S.Ct.* 77, 70 *L.Ed.*2d ·74 (1981); *State Health Plan, supra,* 262 *N.J.Super.* at 484–85, 621 *A.*2d 484. We are satisfied that the Department did not abuse this discretion by adopting regulations which impose moratoria upon specified types of certificate of need applications. This court has long recognized the appropriateness of such regulations when the Department's surveys indicate a lack of need for a particular type of health care service. *Cooper River Convalescent Ctr. v. Dougherty, supra,* 133 *N.J.Super.* at 232, 336 *A.*2d 35. Similarly, the Department may act by regulation if it concludes that there is a need for a particular health care service but that this need should be met solely through the limited expansion of existing services. In *Bally Mfg. Corp. v. New Jersey Casino Control Comm'n, supra,* 85 *N.J.* at 333, 426 *A.*2d 1000, the Court indicated that when a regulation reflects "a policy decision based on undisputed facts, principles of fair play and administrative due process [do] not require [an] evidentiary hearing." *See also High Horizons Dev. Co. v. State Dep't of Transp.*, 120 *N.J.* 40, 50–54, 575 *A.*2d 1360 (1990). The Department's moratorium upon certificate of need applications for new cardiac catheteriza-

tion facilities is based on a policy judgment of general application—the desirability of maintaining the present structure for the delivery of those services pending completion of the Department's study of the State's treatment of cardiovascular disease—rather than any circumstances specifically applicable to Somerset and Monmouth. The same general policy judgment also underlies the moratorium upon certificate of need applications for new cardiac surgery programs to which Englewood is subject. Therefore, the only issue is whether there is a rational basis for these moratoria.

■ We consider first Englewood's challenge to the part of the regulations which imposes a total moratorium upon certificate of need applications for cardiac surgery services. In rejecting Englewood's objections to this moratorium, the Department stated:

> In order to assess the global issue of cardiovascular health in New Jersey, the Commissioner of Health convened the Cardiovascular Health Advisory Panel (CHAP) comprised of leading State experts in the fields of health promotion, disease prevention, and diagnosis and treatment services. At the same time that this expert group was empaneled, the Department sought to greatly enhance its data collection and analysis of Statewide cardiac data by establishing a patient-specific data base that stratifies cardiac patients according to pre-procedure risk factors that will assist the Department, the individual cardiac providers, and potential consumers in assessing the performance of the State's cardiac resources. This enhanced data collection effort began as of July 1, 1993 for open heart surgery patients and has been extended to therapeutic intervention patients as of October 1, 1993. The CHAP ... has committed itself ... to assist the Department in its overall review of the entire spectrum of public policy regarding cardiovascular disease. As indicated in the original proposal summary, the cardiac chapter contains reserved sections that deal with the initiation of new services that will be completed pending the outcome of the Department's cardiac policy review.

> The Department recognizes the fact that there is considerable interest in the establishment of new services among many of the State's hospitals; however, the Department must develop the above criteria in order to determine, in the words of the statute, that the service is necessary and will have a positive economic impact on the delivery of health care services.

> [25 *N.J.R.* 6019, 6021 (Dec. 20, 1993).]

We are satisfied that the Department reasonably determined to withhold consideration of any certificate of need applications for cardiac surgery services until it completes a review of the need for those services and, if such a need is established, the most appro-

priate means of satisfying this need. This moratorium avoids the risk of the Department authorizing what may be shown upon further study to be unnecessary or inappropriate services, thereby preventing a possible misallocation of the State's limited health care resources. Moreover, Englewood has failed to show that there is a current need for the expansion of cardiac surgery services in its region. Although Englewood notes that the Department's statistical surveys show a substantial increase in the performance of cardiac surgery procedures between 1988 and 1991, that data does not demonstrate that its region's present facilities are inadequate. Therefore, Englewood has failed to make the kind of showing required to overcome the presumption of validity extended to the regulation imposing a temporary moratorium upon certificate of need applications for cardiac surgery services.

We turn next to Somerset's and Monmouth's arguments that the Department's moratorium upon certificate of need applications for the establishment of new cardiac catheterization facilities, while allowing applications for the expansion of existing services, is arbitrary and capricious. In responding to this proposed partial moratorium, Somerset and Monmouth presented written comments and oral testimony that their patients have been inconvenienced by being required to wait until cardiac catheterization facilities become available and by having to travel to other facilities which perform this service. In rejecting these objections, the Department stated:

A Joint American College of Cardiology/American Heart Association Task Force ... issued a report in November, 1991 which chronicled the development of cardiac catheterization laboratories over the past four decades. The Task Force recommended "a very cautious approach to the development of new laboratory services...."

. . . .

The initial analysis of the State's cardiac care diagnostic and treatment services, contained in the cardiovascular disease chapter of the State Health Plan, noted that considerable open heart surgery and cardiac catheterization resources existed in New Jersey and that overall utilization of these resources Statewide represented approximately 60 percent of capacity. Within those Statewide figures, however, there was considerable variation within LAB regions and among specific cardiac

providers. Several existing cardiac catheterization providers, in particular those located at cardiac surgery centers were lengthier therapeutic interventions (for example, coronary angioplasty, complex electrophysiology studies) are permitted, exhibited considerable utilization that greatly exceeded the capacity levels established both in the Plan (2,000 catheterization equivalents or CEs) and in these rules (2,500 CEs). The Department's concern over the excessive demands being placed on a relatively small percentage of the State's cardiac catheterization laboratory resources, however, was tempered by an overall concern over the appropriateness of these procedures. Clearly the adequacy of current Statewide resources should be determined in the context of a review of cardiovascular health promotion and disease prevention strategies that over time will affect the demands being placed on the State's cardiac diagnostic and treatment service providers.

[25 *N.J.R.* at 6020.]

In addition, in rejecting one of the New Jersey Hospital Association's objections to the proposed regulations, the Department noted the view shared by the American College of Cardiology and the American Heart Association that new cardiac catheterization services should be authorized only at facilities which also perform cardiac surgery:

The American College of Cardiology (ACC) and the American Heart Association (AHA) clearly identified this issue in their report:

"In view of the lack of appropriately controlled safety and need data for hospital-based mobile or free-standing laboratories operating without on-site (accessible by gurney) cardiac surgery facilities, the task force reaffirms the position that further development of these services cannot be endorsed at this time. In addition, there is reason for major concern that such proliferation in catheterization services may contribute to increasing costs and troubling ethical questions."

[*Id.* at 6021.]

*See also Saint Joseph's Hosp. & Medical Ctr. v. Finley,* 153 *N.J.Super.* 214, 219, 379 *A.*2d 467 (App.Div.1977) (noting that "[a]ll experts agreed ... that it is desirable that the catheterization laboratory and open heart surgery unit should be in the same hospital."), *certif. denied,* 75 *N.J.* 595, 384 *A.*2d 825 (1978). Although the new cardiac regulations would authorize a hospital which currently provides cardiac catheterization services but has no cardiac surgery facilities to apply for a certificate of need to expand its services, it appears that most, if not all, of the hospitals

now permitted to apply for certificates of need to increase their cardiac catheterization services also perform cardiac surgery.

We are satisfied that the Department did not act arbitrarily or capriciously in determining that delays in the availability of cardiac catheterization services due to the overutilization of existing facilities should be addressed, at least for the time being, by considering certificate of need applications for the "*limited* expansion of existing invasive cardiac laboratory resources," 25 *N.J.R.* 3712 (emphasis added), rather than by authorizing the establishment of new facilities. It was within the Department's discretionary authority to conclude that any inconvenience to patients as a result of their being required to travel to existing facilities is outweighed by the public interest in preventing a proliferation of such facilities, possibly resulting in a lower quality of health care, pending the Department's completion of a comprehensive study of the need for additional cardiac services and the most appropriate means of fulfilling whatever need may be found to exist.

It must be emphasized that the moratorium which these regulations establish is only temporary. If the Department's comprehensive study of cardiac services indicates that the convenience of cardiac patients and their physicians would be promoted by the establishment of new facilities for cardiac catheterization services, without adversely affecting the quality of care or unduly increasing the cost of this service, the Department can terminate this moratorium and adopt regulations governing certificate of need applications for such facilities.[2] But if the Department concludes that there is no need for additional cardiac catheterization facilities, or that cardiac catheterization services should be performed

---

[2] At that point Somerset and Monmouth would be entitled to have their certificate of need applications considered. We have no occasion to decide whether Somerset and Monmouth would then be entitled to any priority in the consideration of their applications by virtue of the fact that they were filed in 1991. See *Cooper River Convalescent Ctr. v. Dougherty, supra,* 133 *N.J.Super.* at 234, 336 *A.2d* 35.

only at facilities which also perform cardiac surgery, the temporary moratorium undoubtedly would be superseded by regulations which would preclude facilities such as Somerset and Monmouth from filing certificate of need applications for cardiac catheterization services.

Therefore, the Department's regulations represent a rational means of maintaining the present structure for the delivery of cardiac services while allowing for a limited expansion of existing cardiac catheterization services to alleviate any shortage in the availability of this service which is so acute that it cannot await completion of the Department's studies.[3]

### III

Finally, Somerset argues that the Department's cardiac regulations must be invalidated because one of the members of the HCAB who voted in favor of them had a disqualifying conflict of interest. Somerset contends that HCAB member Sister Margaret Straney should not have participated in the adoption of the regulations because she is affiliated with St. Michael's Medical Center, which is an applicant for a certificate of need for expansion of its cardiac catheterization services.

No interested party asked Sister Straney to disqualify herself from participating in the HCAB's consideration of the proposed cardiac rules. Although Sister Straney noted the possible impact of the adoption of the regulations upon St. Michael's, she did not describe it in any detail. Thus, the record is unclear precisely how the regulations might impact upon this health care facility.

---

[3] Since we conclude that the parts of the Department's recently adopted cardiac care regulations which impose moratoria upon the consideration of certificate of need applications for cardiac surgery services and new cardiac catheterization facilities are valid, we have no occasion to decide whether, or under what circumstances, the Department may postpone consideration of certificate of need applications by not issuing a "call" for applications pursuant to *N.J.A.C.* 8:33–4.1. See footnote 1 *supra.*

 The common law rule is that "whether a particular interest is sufficient to disqualify ... depends upon the circumstances of the particular case." *Wyzykowski v. Rizas,* 132 *N.J.* 509, 523, 626 *A.*2d 406 (1993) (quoting *Van Itallie v. Borough of Franklin Lakes,* 28 *N.J.* 258, 268, 146 *A.*2d 111 (1958)). The general test is "whether the circumstances could reasonably be interpreted to show that they had the likely capacity to tempt the official to depart from his sworn public duty." *Ibid.*

Similarly, under the Conflicts of Interest Law, *N.J.S.A.* 52:13D–12 to –27, which is applicable to members of the HCAB, see *N.J.S.A.* 52:13D–13(e), each State agency is required to adopt a Code of Ethics which conforms to general standards, including:

> No State officer or employee or special State officer or employee should act in his official capacity in any matter wherein he has a direct or indirect personal financial interest that might reasonably be expected to impair his objectivity or independence of judgment.
>
> . . . .
>
> No State officer or employee or special State officer or employee should knowingly act in any way that might reasonably be expected to create an impression or suspicion among the public having knowledge of his acts that he may be engaged in conduct violative of his trust as a State officer or employee or special State officer or employee.
>
> [*N.J.S.A.* 52:13D–23(e)(4), (7).]

However, "[r]ules of conduct adopted pursuant to these principles should recognize that under our democratic form of government public officials and employees should be drawn from all of our society, that citizens who serve in government cannot and should not be expected to be without any personal interest in the decisions and policies of government" and that "standards of conduct should separate those conflicts of interest which are unavoidable in a free society from those conflicts of interest which are substantial and material, or which bring government into disrepute." *N.J.S.A.* 52:13D–23(e)(8).

 The Health Care Facilities Planning Act expressly requires the Governor to appoint members to the HCAB who are "representative of medical and health care facilities and services."

*N.J.S.A.* 26:2H–4. Therefore, the Conflicts of Interest Law cannot be reasonably construed to require the disqualification of an HCAB member from participating in the consideration of any regulation which might in some way affect the health care provider with which that member is affiliated.

An HCAB member undoubtedly would be required to disqualify herself from participating in a matter directly affecting a health care provider with which the member is affiliated, such as a certificate of need application. However, this appeal involves the adoption of regulations generally applicable to every health care provider which provides or may desire to provide any form of cardiac services. If disqualification were required simply because a proposed regulation could in some way impact on a facility with which an HCAB member is affiliated, the HCAB would be deprived of the benefit of participation by health care facility representatives when making general policy decisions regarding which those representatives have substantial experience and knowledge. We do not believe that such an expansive rule of disqualification is required either by the Health Care Facilities Planning Act or the Conflicts of Interest Law. Consequently, Sister Straney was not required to disqualify herself from participating in the HCAB's consideration of the proposed cardiac care regulations.

Affirmed.