657 A.2d 1202

DOUGLAS R. COLKITT, M.D., APPELLANT–RESPONDENT,

v. BRUCE SIEGEL, M.D., M.P.H., ACTING COMMISSIONER OF HEALTH, STATE OF NEW JERSEY, RESPONDENT–APPELLANT.

Argued January 30, 1995—Decided May 22, 1995.

*Michael J. Haas,* Senior Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney, *Joseph L. Yannotti,* Assistant Attorney General,

of counsel, *Mr. Haas* and *Darcy A. Saunders,* Deputy Attorney General, on the briefs).

*John T. Brennan, Jr.,* a member of the District of Columbia bar, argued the cause for respondent *(Cohen, Shapiro, Polisher, Shiekman and Cohen,* attorneys, *Mr. Brennan* and *Murray J. Klein,* on the brief).

The opinion of the Court was delivered by

O'HERN, J.

The central question in this appeal is whether a physician must obtain a certificate of need to open a high-voltage cancer radiation treatment facility. The Appellate Division held that the regulations of the State Department of Health requiring a certificate of need were invalid under our decision in *In re Adoption of Regulations Governing State Health Plan,* 135 *N.J.* 24, 637 *A.*2d 1246 (1994). In that case we held, substantially for the reasons stated by Judge Skillman in the Appellate Division opinion reported at 262 *N.J.Super.* 469, 621 *A.*2d 484 (1993), that regulations directly implementing the policies identified in the State Health Plan were invalid under Chapter 31 of the Laws of 1992, which expressly forbade regulations with such an effect or intent. We find that the subject regulations requiring a certificate of need incorporated many standards and requirements that long predated the adoption of a State Health Plan in 1992, and that the regulations do not directly implement health-planning goals identified in the State Health Plan. Accordingly, we reverse the judgment of the Appellate Division and remand the matter to the Department of Health to permit consideration of plaintiff's request for a certificate of need.

I

Plaintiff, Douglas R. Colkitt, is licensed to practice as a radiation oncologist in New Jersey, New York, and Pennsylvania. A radiation oncologist is a licensed, practicing physician who specializes in the treatment of cancer through X-ray therapy. Dr.

Colkitt seeks to install cancer radiation treatment equipment—specifically, a linear accelerator and treatment simulator—in an outpatient office in Vineland, New Jersey. *N.J.S.A.* 26:2H–7 states that "[n]o health care facility shall be constructed or expanded, and no new health care service shall be instituted * * * except upon application for and receipt of a certificate of need * * *." One may apply for a waiver of the certificate requirement if:

█ the equipment or health care service is such an essential, fundamental and integral component of the physician's practice specialty, that the physician would be unable to practice his specialty according to the acceptable medical standards of that specialty without the health care service or equipment; [2] the physician bills at least 75% of his total amount of charges in the practice specialty which uses the health care service or equipment; and [3] the health care service or equipment is not otherwise available and accessible to patients * * *.

[*N.J.S.A.* 26:2H–7e.]

In March 1992 the Department of Health (Department) informed Dr. Colkitt that to establish his radiation therapy facility, he would need either a certificate or a waiver. Dr. Colkitt submitted a request for a waiver on March 24, 1992. On June 2, 1992, the Department requested information from South Jersey Hospital System concerning the effect of Dr. Colkitt's proposed service on its existing radiation treatment services. The Department wanted that information because South Jersey Hospital System was an approved provider in the same health-planning region as Dr. Colkitt's facility. South Jersey Hospital System opposed Dr. Colkitt's proposal. It saw no need for an additional facility because no backlog of patients existed, and because it could expand its existing radiation treatment capacity should the need arise. Without informing Dr. Colkitt of the information supplied by South Jersey Hospital System, the Department requested additional information concerning his qualifications, practice, and proposed Vineland facility, which Dr. Colkitt provided on July 1, 1992.

The Commissioner of Health found that Dr. Colkitt had failed to show that he would be unable to practice his specialty without the Vineland facility, that "any substantial portion" of his total charges

for radiation therapy services would be derived from the Vineland facility, and that the radiation service was otherwise unavailable to patients in the area. The Commissioner denied Dr. Colkitt's waiver request on September 15, 1992. She informed Dr. Colkitt that a moratorium on the acceptance of certificate applications had been in effect since August 22, 1991, and would expire when the Department formally adopted new regulations.

Dr. Colkitt appealed that decision, arguing that his facility was not subject to certificate requirements because no regulations were in place when he submitted his proposal. The previous certificate regulations governing radiation oncology services, *N.J.A.C.* 8:33I–1.1 to –1.5, effective since 1981, had expired on September 15, 1991, pursuant to the "Sunset Provisions" of Executive Order 66 (1978), which created a presumptive five-year life span for all administrative rules. Thereafter, the Department enacted an updated set of radiation therapy regulations, *N.J.A.C.* 8:33I–1.1 to –1.6, which became effective February 16, 1993 (February 1993 regulations)—after Dr. Colkitt submitted his application. According to Dr. Colkitt, because no regulations were in place when he sought to operate his facility, the Commissioner had no jurisdiction over his oncology services. Dr. Colkitt argued that the August 22, 1991, moratorium on applications for projects that required certificate approval became irrelevant with the expiration of the certificate regulations in 1991. He also asserted that the February 1993 regulations were not intended to be applied retroactively. The Department insisted that it never intended to cease regulating such services and that the Commissioner had sufficient authority to require a certificate or a waiver.

The Appellate Division determined that because *N.J.A.C.* 8:33I had lapsed, unless the new chapter 8:33I, effective February 16, 1993, was valid and applied retroactively, Dr. Colkitt's proposal would not fall under certificate review. Anticipating that this Court's decision in *State Health Plan* would "definitively resolve" the validity of the new regulations, the Appellate Division concluded that the February 1993 regulations would apply retroactively to

Dr. Colkitt, unless *State Health Plan* invalidated them. The court found no unfairness in subjecting Dr. Colkitt to the application standards that governed health-care providers under valid prior and then-current regulations.

The court next considered the Department's waiver decision, in the event that the regulations were upheld and applied retroactively to Dr. Colkitt. As noted, under *N.J.S.A.* 26:2H–7e, a physician-applicant must meet three criteria to earn a waiver of the certificate requirement. First, the applicant must show an inability to practice the specialty without the service or equipment at issue; second, at least seventy-five percent of the applicant's charges must stem from the challenged service or equipment; and third, the service or equipment must otherwise be unavailable to patients, as determined by the Commissioner's standards.

The court found that Dr. Colkitt met the first two requirements but found with regard to the "availability" criterion that the Commissioner had denied Dr. Colkitt due process by not extending to him the opportunity to rebut the information obtained from South Jersey Hospital System. The court rejected the Commissioner's argument that Dr. Colkitt could adequately confront the information on appeal, and held that the denial of due process required a remand for further consideration on the availability criterion. It therefore gave Dr. Colkitt the choice either to await this Court's decision in *State Health Plan* or to accept a remand on the third portion of the waiver. We decided *State Health Plan* on February 28, 1994. After reconsideration, the Appellate Division reaffirmed its ruling that *State Health Plan* invalidated the new certificate regulations, thus allowing Dr. Colkitt to operate his clinic.

We granted certification on September 13, 1994, 138 *N.J.* 264, 649 *A.*2d 1284, to consider whether that decision conflicts with *State Health Plan* and *Monmouth Medical Center v. State Department of Health,* 272 *N.J.Super.* 297, 639 *A.*2d 1129 (App.Div.), *certif. denied,* 137 *N.J.* 310, 645 *A.*2d 138 (1994), a case holding that chapter 31 did not invalidate regulations declaring a moratori-

um on the processing of certificates of need for new cardiac facilities. (We later stayed the Appellate Division grant of authority for Dr. Colkitt to operate his facility.) The Commissioner has not petitioned for review of the Appellate Division's ruling on the waiver criteria. Nor has Dr. Colkitt asked us to review the Appellate Division's determination that, if valid, the February 1993 regulations apply retroactively to his application. The only issue before us, then, is whether the February 1993 certificate of need regulations for radiation oncology facilities are valid in light of *State Health Plan*.

## II

In 1971 the Legislature enacted the Health Care Facilities Planning Act, *L.*1971, *c.* 136, *N.J.S.A.* 26:2H–1 to –26, which required that "[n]o health care facility shall be constructed or expanded, and no new health care services shall be instituted * * * except upon * * * receipt of a certificate of need * * *." *N.J.S.A.* 26:2H–7. The purpose of that Act was to promote "health care services of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost." *N.J.S.A.* 26:2H–1. The Act provided legislative standards to govern the Department's review of certificate applications:

> No certificate of need shall be issued unless the action proposed in the application for such certificate is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services.
>
> [*N.J.S.A.* 26:2H–8.]

In 1991 the Legislature amended the Health Care Facilities Planning Act by enacting the Health Care Cost Reduction Act, *L.*1991, *c.* 187, which established the State Health Planning Board, a new agency within the Department of Health, *N.J.S.A.* 26:2H–5.7, and directed the Board to prepare a "State Health Plan." *L.*1991, *c.* 187, § 34; *N.J.S.A.* 26:2H–5.8a. The amendment provided that "[t]he State Health Plan shall identify the unmet health care needs in an area by service and location and it shall serve as the basis upon which all certificate of need applications shall be

approved." *Ibid.* To conform with that new provision, the following criterion was added to *N.J.S.A.* 26:2H–8: "No certificate of need shall be issued unless the action proposed in the application for such certificate is consistent with the health care needs identified in the State Health Plan * * *." *L.*1991, *c.* 187, § 31.

Pursuant to that legislation, the State Health Planning Board drafted several portions of a proposed State Health Plan. After its review of that draft, the Department proposed that certain parts of the State Health Plan be adopted as regulations. Following a notice-and-comment period, *see* 24 *N.J.R.* 2562–65 (July 20, 1992), the Health Care Administration Board approved and the Commissioner adopted the regulations on June 25, 1992. Those regulations, *N.J.A.C.* 8:100–1.1 to –18.18, were collectively entitled "State Health Plan." The purpose of that chapter was "to establish a plan that will satisfy the mandate of [the Health Care Cost Reduction Act]." *N.J.A.C.* 8:100–1.1(a). The State Health Planning Board released a "preliminary draft chapter" of the State Health Plan on cancer treatments. 24 *N.J.R.* 3789, 3831–63 (Nov. 2, 1992). However, it never completed or adopted that chapter.

On June 29, 1992, four days after the "State Health Plan" regulations were adopted, the Legislature amended the Health Care Cost Reduction Act and Health Care Facilities Planning Act by enacting chapter 31. Chapter 31 deleted the requirement that the State Health Plan serve as the basis for all certificate applications. Instead, chapter 31 provided that the Plan would serve only as "an advisory document which may be considered when certificate of need applications are reviewed for approval." *N.J.S.A.* 26:2H–5.8a. In addition, chapter 31 imposed the following restriction on the Department's authority to adopt regulations:

Effective May 15, 1992, notwithstanding any other provision of law to the contrary, neither the Health Care Administration Board [nor] the Department of Health shall adopt any regulation which implements any goals, objectives or any other health planning recommendations that have been included in the State Health Plan prepared by the State Health Planning Board.

[*Ibid.*]

Chapter 31 also amended *N.J.S.A.* 26:2H–5.8b and 26:2H–8 to reflect the new advisory status of the State Health Plan.

The New Jersey Hospital Association challenged the validity of the newly adopted "State Health Plan" regulations, *N.J.A.C.* 8:100–1.1 to –18.18, on the ground that they were inconsistent with chapter 31's restriction on the Department's power to adopt regulations implementing the State Health Plan. The only issue in *State Health Plan, supra,* 135 *N.J.* 24, 637 *A.2d* 1246, was the constitutionality of chapter 31 as it applied to those regulations.

In *State Health Plan,* the Appellate Division concluded, and we agreed, that chapter 31 was constitutional: "The Legislature * * * may enact legislation which overrides and supersedes any agency rule which the Legislature concludes is inconsistent with sound public policy. Chapter 31 constitutes a proper exercise of these fundamental legislative powers." *In re Adoption of Regulations Governing State Health Plan,* 262 *N.J.Super.* 469, 481–82, 621 *A.2d* 484 (1993) (citation omitted), *aff'd,* 135 *N.J.* 24, 637 *A.2d* 1246 (1994).

The regulations at issue in *State Health Plan* clearly conflicted with chapter 31 in that they explicitly identified the policies and goals of the State Health Plan and established specific guidelines to satisfy that Plan. The Department conceded that the regulations in *State Health Plan* conflicted with chapter 31. 262 *N.J.Super.* at 486, 621 *A.2d* 484.

In this case the Department does not concede that the February 1993 regulations requiring a certificate of need for radiation oncology services conflict with chapter 31. Rather, the Department argues that the February 1993 regulations are largely a recodification of older, expired regulations, and because they do not conflict with chapter 31, they are valid.

### III

The burden of establishing the invalidity of an agency regulation is on the challenger. *Monmouth Medical Center,*

*supra,* 272 *N.J.Super.* at 311–12, 639 *A.2d* 1129. The February 1993 regulations are nearly identical to the previous regulations. Both the February 1993 regulations and the older regulations establish criteria and standards for the review of certificate applications for megavoltage radiation oncology services. The criteria and standards in both sets of regulations are substantially the same.

The only apparent exception is a new requirement that "annual patient treatment capacity levels for existing and approved megavoltage equipment must exceed 90 percent for the calendar year prior to the Commissioner's call for certificate of need applications for new services * * *." *N.J.A.C.* 8:33I–1.4(a). That new requirement corresponds to the following portion of the preliminary draft of the State Health Plan published at 24 *N.J.R.* 3848 (Nov. 2, 1992):

> Strategies that can be employed to "redirect" cancer treatment in the future would include:
>
> \*       \*       \*       \*       \*       \*       \*       \*
>
> Future acute cancer resources allocation can be determined through a [Local Advisory Board]—specific process, with certificate of need applications *only* being accepted for processing from those regions of the state that achieve a relatively high level of regional service capacity (e.g., 90 percent over the previous 12 months).

Further, *N.J.A.C.* 8:33I–1.4(c)8 notes that applications for new and additional radiation oncology programs in a health service area will be evaluated by considering a number of factors, including whether "the proposed service is compatible with overall health planning goals and recommendations for the State as identified in the State Health Plan * * *."

When the February 1993 regulations were proposed, the Department specifically described them as "consistent with both the previous megavoltage rules and the advice contained in the *draft* cancer chapter of the State Health Plan." 24 *N.J.R.* 4222 (Nov. 16, 1992). The Department also noted:

> Since the new rules are being proposed without the advantage of the relevant advice contained in the State Health Plan, the Department views this proposal as

> an interim measure that is principally intended to reaffirm the regional nature of this service and can serve to guide the consideration of replacement megavoltage services while awaiting completion of the cancer chapter of the State Health Plan. It is anticipated that future amendments may be necessary to refine policies regarding quality assurance measures. A two year expiration date is also being proposed in order to make clear the Department's intention to review and amend this chapter to conform to the final text of the cancer chapter of the State Health Plan.
>
> [*Ibid.*]

The February 1993 regulations are not entirely new, but largely a revival of the previous regulations. Nevertheless, Dr. Colkitt maintains that because the February 1993 regulations were promulgated to further the goals and objectives enunciated in the State Health Plan Cancer Chapter and were "intended to implement 'the goals, objectives and recommendations' of the State Health Plan," the February 1993 regulations are invalid under *State Health Plan*.

■ Dr. Colkitt interprets chapter 31 too broadly. We agree with Judge Skillman's analysis in his later opinion in *Monmouth Medical Center, supra*, 272 *N.J.Super.* at 309, 639 *A.2d* 1129, that in enacting chapter 31, the Legislature did not intend to prohibit the Department from adopting any regulations that correspond "in any respect with any of the numerous views and recommendations contained in the State Health Plan":

> If chapter 31 were construed that broadly, it could effectively prevent the Department from exercising its rule-making authority and seriously undermine its capacity to discharge its "central, comprehensive responsibility" under the Act "for the development and administration of the State's policy with respect to health planning, hospital and related health care services and health care facility cost containment programs." *N.J.S.A.* 26:2H–1. We are unwilling to ascribe such an intent to the Legislature based upon the vague, general language of chapter 31.
>
> [*Ibid.*]

We agree that chapter 31 prohibits only "the immediate and direct implementation of the specific health planning decisions set forth in the State Health Plan." *Ibid.*

The February 1993 regulations are not an "immediate and direct implementation" of the State Health Plan. The February 1993 regulations are in the main consistent with the previous ones.

That the regulations might also be consistent with the State Health Plan—which is an advisory document—does not render them invalid. To the extent that the Commissioner might refuse to entertain an application that did not establish that ninety percent of capacity levels had been reached, we direct that the ninety-percent provision not be a threshold but rather a criterion to be considered in the decision-making process. Similarly, in evaluating applications for new and additional radiation oncology programs, *N.J.A.C.* 8:33I–1.4(c)8, the Department may consider as a factor whether "the proposed service is compatible with" the State Health Plan.

## IV

To sum up, when so viewed, the February 1993 regulations governing certificate eligibility for radiation oncology services are not an "immediate and direct implementation" of the goals and objectives of the State Health Plan. Because such regulations do not conflict with chapter 31, they are valid. The Appellate Division held that if valid, the February 1993 regulations apply retroactively to Dr. Colkitt's application. The Appellate Division further held that if after *State Health Plan* the February 1993 regulations applied to Dr. Colkitt, he would be entitled to a new hearing to give him an opportunity to review and rebut all information on which the Department relied when considering his application. In addition, we direct that any of the numerous views and recommendations expressed as goals of the State Health Plan that are referenced in the subject regulations serve only as "general standards to guide the Department." *State Health Plan, supra,* 135 *N.J.* at 29, 637 *A.*2d 1246 (citing *N.J.S.A.* 26:2H–8).

Since we heard oral argument in this matter, the February 1993 regulations have expired. On February 16, 1995, the Department re-adopted, with amendments, the February 1993 regulations. We decline to dismiss this appeal as moot as requested by Dr. Colkitt. The newest regulations will govern further proceedings

in the matter in the same manner as the February 1993 regulations, with any material drawn from the State Health Plan serving as an "advisory document" in the review of certificate of need applications. *N.J.S.A.* 26:2H–5.8a. In those proceedings the Department of Health may consider Dr. Colkitt's claims that he should be permitted to continue to operate the facility, allegedly opened before we stayed the Appellate Division's judgment, as well as the needs of any patients whom he might be currently serving. The policy choice between managed competition and a free market in medical services is for the Department to resolve under its statutory mandate.

We reverse the judgment of the Appellate Division invalidating *N.J.A.C.* 8:33I–1.1 to –1.6, effective February 16, 1993, and remand for further proceedings in accordance with this opinion.

*For reversal and remandment* Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.