739 A.2d 962

IN THE MATTER OF CERTIFICATE OF NEED GRANTED TO ST. FRANCIS MEDICAL CENTER; HELENE FULD MEDICAL CENTER, APPELLANT, v. NEW JERSEY DEPARTMENT OF HEALTH AND SENIOR SERVICES, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Telephonically argued September 30, 1999—Decided November 8, 1999.

Before Judges PRESSLER, LANDAU and KIMMELMAN.

*Richard R. Width* argued the cause for appellant Helene Fuld (*Lindabury, McCormick & Estabrook*, attorneys; *Mr. Width*, of counsel and on the brief).

*Mylyn K. Alexander*, Deputy Attorney General, argued the cause for respondent (*John J. Farmer, Jr.*, Attorney General, attorney; *Joseph L. Yannotti*, Assistant Attorney General, of counsel; *Ms. Alexander*, on the brief).

*Murray J. Klein* argued the cause for respondent St. Francis Medical Center (*Reed, Smith, Shaw & McClay*, attorneys; *Mr. Klein*, of counsel; *Joseph D. Glazer*, on the brief).

The opinion was of the court was delivered by

LANDAU, J.A.D.

In these consolidated appeals, Helene Fuld Medical Center (Fuld) challenges a final determination by the Department of Health and Senior Services (Department), to the extent that it granted a Certificate of Need (CN) authorizing conversion of five open psychiatric beds[1] at respondent St. Francis Hospital (St. Francis), Trenton, to closed psychiatric beds servicing Mercer County, while allowing Fuld to convert only six of the eleven open beds it sought to be converted to closed status for Mercer County[2].

### The Factual and Regulatory Background

Pursuant to *N.J.A.C.* 8:33–4.1(a), the Department issued a call on May 2, 1994, published at 26 *N.J.R.* 1887, inviting proposals from acute care hospitals for a CN to convert underutilized beds to a category that would result in "bed increases" within the same hospital facility. The call was limited to several categories, including "acute psychiatric," and required that hospitals making a proposal must be currently licensed for the category and that the total number of beds for which the hospital was licensed may not be increased by reason of the proposed conversion. Underlying this call were statistical studies issued October 1 and November 9, 1993, (later revised September 8, 1994 and November 10, 1994) in which, as relevant to these appeals, the Department identified a surplus of open psychiatric beds totaling 74 in Mercer County, six in Hunterdon County and nine in Somerset County, while listing as unmet, the need for eleven closed beds in Mercer, one in Hunterdon, and five in Somerset.

---

[1] "Open" beds serve voluntarily admitted psychiatric patients, while "closed" beds are utilized for short term intensive treatment of involuntarily committed patients, but not for long term commitments.

[2] The appeal from grant of the St. Francis CN is taken directly to this court under *R.* 2:2–3(a)(2). Appeal from partial denial of Fuld's CN request followed initial resort to administrative remedies, *N.J.S.A.* 26:2H–9, which resulted in affirmance of the decision rendered by the Commissioner of the Department.

At the time the parties responded to the 1994 call, Fuld had 24 open psychiatric beds, with a 73 percent occupancy rate and four closed psychiatric beds. St. Francis had twenty-four open psychiatric beds operating at 41.77 percent occupancy, and no closed beds. *N.J.A.C.* 8:33A–1.9 establishes 70 percent as the appropriate minimum occupancy rate for hospital psychiatric services.

Fuld applied to convert enough open beds to satisfy the entire unmet eleven closed bed need for Mercer County. It also applied to convert a bed to meet the one closed bed need in Hunterdon. St. Francis sought five of the closed Mercer County beds, and also asked to convert five beds in Somerset County to closed status, and for an additional bed to serve as a "back-up" in Hunterdon County.

Consistent with *N.J.A.C.* 8:33, the requests were submitted to the respective Mental Health Boards of the affected counties, and thereafter to the Local Advisory Board for Region IV (LAB IV).

On January 5, 1995, the Hunterdon County Mental Health Board considered the applications of St. Francis and Fuld with regard to the conversion of one bed. It decided to recommend the Fuld application.

On March 16, 1995, the applications of St. Francis and Fuld were considered by the Mercer County Health Board. The Mercer Board responded with a qualified endorsement of the Fuld request and an endorsement of the St. Francis request. It said, "[s]ince both proposals are in competition over a five(5) bed portion of a total requested conversion of eleven (11) such beds, these endorsements include the Board's explicit recommendation to [Helene Fuld] that it reduce its request for conversion of eleven (11) beds to six (6) to remain within the planned bed need...."

On March 22, 1995, after reviewing the St. Francis application, the Somerset County Board recommended that St. Francis be permitted to convert to closed use, the five beds it sought in Somerset County.

Local Advisory Board IV voted unanimously to recommend the approval for conversion by St. Francis of five open beds to closed beds in Mercer County, as well as for a similar conversion of five beds to serve Somerset County. It also voted to recommend converting six open beds to closed beds at Fuld for Mercer County plus an additional bed for Hunterdon County. It cited as reasons: (1) opportunity for patient choice; (2) conversion of open beds to closed beds in St. Francis will raise the low occupancy rates of open beds at St. Francis; (3) the rate of admissions to State hospitals such as Trenton State Psychiatric Hospital will decrease as a result of additional closed beds (this is especially important with the proposed closing of Marlboro Hospital); (4) the closing of open beds at Fuld will raise the occupancy rates at St. Francis; (5) the recommendation of the Mercer County Mental Health Board, Somerset County Health Board and Hunterdon County Mental Health Board; and (6) St. Francis and Fuld both satisfied the criteria of *N.J.A.C.* 8:33 and 8:33R.

These actions were concurred in by the Department of Human Services, which also appears to have recognized that granting Fuld's request to convert eleven beds to closed bed status would, based upon then current utilization rates at that facility, exhaust or exceed its open acute capacity.

The State Health Planning Board further provided, consistent with *N.J.S.A.* 26:2H–10.1(a)(1) (repealed 1998) and *N.J.A.C.* 8:33–4.14, independent consideration to the Fuld and St. Francis CN requests. After appropriate review, the recommendations made by Local Advisory Board IV were adopted and the CN application forwarded to Commissioner Fishman for Departmental action.

By letter dated August 3, 1995, the Commissioner granted a CN to St. Francis to convert five adult open beds to closed acute psychiatric beds for Mercer County and five adult open beds to closed acute psychiatric beds for Somerset County needs. Simultaneously, the Commissioner granted leave to Fuld to convert six

Mercer adult open psychiatric beds to adult closed beds, and to convert one bed to closed status for Hunterdon.

The Commissioner observed that:

permitting Helene Fuld to convert the entire need capacity of Mercer County, eleven (11) beds from open psychiatric beds to closed beds, would result in an occupancy rate in excess of one hundred (100%) percent for its remaining adult open bed capacity; the excess capacity will "creat[e] a potential unavailability of needed adult open acute psychiatric services in Helene Fuld's service area"; permitting St. Francis to convert five (5) beds from open psychiatric to closed psychiatric beds will result in the laudable goal of "improved patient choice in Mercer County"; and that the CN granted would increase St. Francis' open bed psychiatric services occupancy to more than ninety (90%) percent, thus "promoting a more efficient and effective delivery of the full range of adult acute psychiatric services at St. Francis."

As noted here in fn. 2, *supra,* Fuld appealed the St. Francis grant directly to this court and appealed through the Office of Administrative Law the denial of part of its Mercer County request. The Administrative Law Judge's initial decision recommended affirmance of the Commissioner's ruling. That decision was in turn affirmed, following argument, by the then-authorized final decision maker, the Health Care Administrative Board. Its decision was appealed to this court, where the two related matters were consolidated.

On appeal, Fuld argues that the Commissioner's August 3, 1995 decision is based upon a "complete misunderstanding" of applicable departmental policies, ignorance of a key fact and of applicable law; that it employs "specious reasoning" respecting the impact of the conversion ruling upon availability of open psychiatric beds in the Fuld service area; and that it failed to recognize the "obvious superior merit" of the Fuld application, instead relying too heavily upon the recommendations of the county and regional mental health boards and the State Health Planning Board.

■ Our consideration of these arguments is restricted within familiar limiting standards. Is the administrative decision arbitrary, capricious or unreasonable? Is it supported by substantial credible evidence on the record as a whole? *Brady v. Board of*

*Review,* 152 *N.J.* 197, 210, 704 *A.*2d 547 (1997); *In re Musick,* 143 *N.J.* 206, 216, 670 *A.*2d 11 (1996). We cannot substitute our judgment for that of the agency possessed of expertise in its legislatively delegated area of concern. *Greenwood v. State Police Training Ctr.,* 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992); *Texter v. Department of Human Servs.,* 88 *N.J.* 376, 382–83, 443 *A.*2d 178 (1982).

■ Tested against these standards, we are satisfied that the decisions under review easily pass muster and must be affirmed. We are satisfied that the agency focused upon the purposes underlying the initial "call", which, *inter alia,* invited CN applications for conversion of underutilized open beds in the acute psychiatric category to fill unmet needs for closed beds in that category.

St. Francis had no closed beds at the time of the call, but twenty-four open beds that operated with only a 41.77 percent occupancy rate. Somerset County needed closed beds. Mercer County needed closed beds. With the St. Francis conversion approvals, the closed bed needs could be addressed while raising that hospital's open bed occupancy rate above the 70% minimum occupancy standard established by the Department. This addressed the key object of the invitational call, namely securing a better balance between met and unmet public needs within hospitals licensed to provide psychiatric services.

By contrast, authorizing conversion of eleven beds at Fuld to closed status would have increased its existing open bed occupancy to a rate calculated at 146% by the Commissioner. The precise percentage is unimportant, it seems to us. The principle is readily understandable. Open beds serve voluntary admissions, most of whom presumably exercise a choice of hospital. Thus it appears that the Commissioner's identification of patient choice preservation as an important factor supporting the balance drawn between Fuld and St. Francis was not unreasonable. Ironically, in light of

Fuld's already high open bed occupancy rates [3], the opportunity for a psychiatric patient seeking voluntary admission to choose Fuld would have been materially diminished by granting its entire eleven closed bed CN request. Thus, it was not unreasonable to find that the element of public choice was served, respecting both open and closed bed patients, by allocating six Mercer County closed beds to Fuld and five to St. Francis. The Commissioner's opinion reflected concurrence

> with the recommendations of the Mid–State Health Advisory Corporation and the State Health Planning Board that the number of open beds to be converted [at Fuld] be reduced to seven, in order to assure Helene Fuld's capacity to accommodate anticipated future demand for adult open acute psychiatric services.

This concern for Fuld's ability to accommodate demand for open beds is consistent with the rationale expressed in the present depart-mental rule, *N.J.A.C.* 8:33R–3.3, covering applications for new or converted adult closed acute psychiatric beds (referred to as STCFs in the rule). It provides, in part:

> If the development of an STCF capacity is proposed through conversion of existing acute beds, then the applicant shall calculate the projected occupancy rate by multiplying the occupancy rate for the past 12 months by the existing number of acute beds. This number shall be divided by the number of acute beds that would remain once a conversion occurs and multiplied by 100. This represents the project[ed] occupancy rate of the remaining acute beds. If the projected occupancy rate for the remaining acute beds exceeds 85 percent, the applicant shall describe what arrangements will be made to accommodate clients who need acute services upon discharge from the STCF. Prior to implementing any changes, this arrangement shall be approved by the Division of Mental Health Services.

> *[N.J.A.C.* 8:33R–3.3(d)(5) ]

Given the reasonable relationship of the CN grants to the purpose of the call which prompted the applications for conversion, we find that the decisions under review are supported by the record, and are not arbitrary or capricious.

---

[3] Arguably Fuld may not even have qualified under the call as having "underutilized" beds because its open bed occupancy rate well exceeded the 70% minimum standard. We do not agree with this rationale, however, as Fuld's annual use rate did reflect a percentage demonstrably short of full occupancy at the time of its application.

We believe it appropriate, nonetheless, to address briefly several of Fuld's arguments.

*Asserted Factual Errors in the Commissioner's Opinion*

Fuld points to the inaccuracy of the Commissioner's statement that conversion of twelve of its twenty-four open beds would create a potential unavailability of needed open acute psychiatric services in "Helen Fuld's *service area.*" (Emphasis added). Of course, that service area is also served by St. Francis. While factually inaccurate, we do not believe it materially impacts the critical issues addressed by the call, nor by the ultimate decision. These issues, addressing unmet needs for closed beds, and correcting severe underusage of open beds, were fully and accurately explored. Certainly *Fuld's* ability to provide open psychiatric beds in the service area would have been materially diminished, as would the opportunity for voluntary admittees to avail themselves of *its* services, if the entire Fuld request for converting to closed beds had been approved. The Commissioner's purpose was made clear in the sentence immediately following that in which the questioned "service area" phrase appears:

> Therefore I concur with the recommendations of the Mid–State Health Advisory Corporation [LAB IV] and the State Health Planning Board that the number of Open Beds to be converted be reduced to seven, *in order to assure Helene Fuld's capacity to accommodate anticipated future demand for adult open acute psychiatric services.* (Emphasis added).

This purpose, as noted above, is consistent with the concern for accommodation of patients discharged from STCFs but who continue to require acute care in open beds. The Commissioner could reasonably conclude that this is best accomplished, both during transitional stages and upon a patient's STCF discharge, within the same hospital setting.

Fuld also argues that the Commissioner based his decision on the crucial factual misconception that St. Francis had a closed bed psychiatric unit which pre-existed its request to convert open beds. We have examined carefully the decision, and the record before the commissioner, and find no basis for this argument. The opinion begins by stating clearly that, "[s]pecifically, St.

Francis proposes to *establish* an adult closed acute psychiatric unit through the conversion [of open beds]." (Emphasis added). Prior to laying down mandatory pre-conditions for implementation of the CNs, the opinion concludes, as to St. Francis, with this paragraph:

> For the reasons noted above, I hereby grant approval to St. Francis for the conversion of ten adult open acute psychiatric beds to ten adult closed acute psychiatric beds. With the grant of this certificate of need, St. Francis may now operate 14 adult open acute psychiatric beds and ten adult closed acute psychiatric beds.

Obviously it was recognized that only with the ten bed conversion would St. Francis "now" operate a total of ten closed beds. Nothing in the opinion, which also relied on the unambiguous recommendations of the several advisory boards and the State Health Planning Board, suggests that a mistaken reliance upon St. Francis as an existing closed bed provider was determinative in approving the challenged Mercer conversions. Reference to St. Francis as a closed bed provider appears only in one paragraph in which the Commissioner was considering the availability of other possible closed bed providers besides Fuld, St. Francis and South Amboy in the LAB IV region. It is plain despite this phraseology that the Commissioner was aware that he was approving creation, and not mere expansion, of a closed psychiatric bed unit at St. Francis.

### Asserted Legal Errors

We turn to Fuld's argument that the Commissioner's decision improperly declined to give effect to *N.J.A.C.* 8:33R, a departmental rule. *N.J.A.C.* 8:33R was in effect prior to the challenged decision of August 3, 1995, but expired on December 11, 1994. It was readopted with substantially the same contents, on February 20, 1996.

■ St. Francis and the Department argue that the Commissioner was not required to decide in conformity with an expired rule. *N.J.A.C.* 8:33–1.2(d) is cited in support of this view. It provides:

> Certificate of need applications shall be reviewed for conformance with the rules in effect on the date the application is accepted for processing or deemed complete for processing, as applicable.

Speaking generally, were an administrative agency to allow a regulation to expire, shortly thereafter readopting substantially the same regulation, but having decided a matter during the hiatus for reasons which conflict squarely with the readopted regulation, we would be loath to review the decision with the deference customarily afforded to administrative expertise. Mindful of *Colkitt v. Siegel,* 140 *N.J.* 200, 657 *A.*2d 1202 (1995), we would regard such inconsistency as a strong indicator of possible arbitrary action.

We do not agree, therefore, with the argument that the Commissioner's August 3, 1995 decision should be upheld because it occurred during a period when *N.J.A.C.* 8:33R was temporarily dormant. However, we find no inconsistency between the Commissioner's August 1995 decision and current rule *N.J.A.C.* 8:33R nor even with the formulation of that rule when it expired in 1994. Read in its entirety, it is clear that *N.J.A.C.* 8:33R contemplates many situations where more than one hospital will serve the closed bed need for a county or area. Indeed, *N.J.A.C.* 8:33R–3.16, the competitive review provision governing the STCFs relied on by Fuld, states that, "the Department *may* elect to approve only the *number of applicants* necessary to provide the estimated number of beds needed in the area." (Emphasis added). It goes on to provide that priority shall be given "to the applicant *or applicants* who, relative to all other projects, demonstrate the fullest level of compliance [with the criteria listed]." *Ibid.* (Emphasis added).

One of the ten listed criteria favors "[u]nits which provide for the entire bed need of their designated STCF geographic area or county." [4] *N.J.A.C.* 8:33R–3.16(a)(6). Other criteria in the rule,

---

[4] In response to our request at oral argument, the Attorney General provided a list of all STCF (closed bed) facilities in New Jersey. It shows that there are five such facilities in Essex County and two each in Union, Monmouth and Mercer counties. Thus, the single unit criterion is not absolute.

however, contain aspects more heavily relied upon by the Commissioner. These included the factor of reduction of excess acute care bed capacity in the area (*N.J.A.C.* 8:33R–3.16(a)(3)); endorsement of the county mental health board(s) of the proposed service area (*N.J.A.C.* 8:33R–3.16(a)(9)); and compliance with other standards and guidelines of law and of *N.J.A.C.* 33R–3.1 to 16 (*N.J.A.C.* 8:33R–3.16(a)(1)). Those other standards embrace *N.J.A.C.* 8:33R–3.13, which states that county mental health board endorsement "shall be considered a significant factor in assessing local need ...", and *N.J.A.C.* 8:33R–3.3(d)(5), quoted above at page 9, which reflects the Departmental concern about the number of open beds which will remain within a hospital where development of a STCF capacity is proposed through conversion of existing open beds.

Given the attention to these *N.J.A.C.* 8:33R criteria evidenced in the Commissioner's opinion, his consideration of the factors set forth in *N.J.S.A.* 26:2H–8 and *N.J.A.C.* 8:33A–1.10(b), and the inclusion of extensive pre- and post-licensure conditions to which the certificates of need were made subject, we are satisfied that the respective CN grants in issue were made and denied consistent with applicable law and regulations, including the temporarily moribund *N.J.A.C.* 8:33R.

Inasmuch as the decision under review finds adequate support in the record, is not arbitrary, capricious or unreasonable, and did not ignore applicable authority, we affirm.