CEASE DELIBERATIONS

648 A.2d 509

IN THE MATTER OF ADOPTION OF
N.J.A.C. 10:52–5.14(D) 2 AND 3.

Superior Court of New Jersey
Appellate Division

Submitted September 13, 1994—Decided October 20, 1994.

Before Judges MICHELS, STERN and KEEFE.

*Cohen, Shapiro, Polisher, Shiekman* and *Cohen,* attorneys for appellants (*Ivan J. Punchatz* and *Monice Barbero–Osborne* on the brief and reply letter brief).

*Deborah T. Poritz,* Attorney General, attorney for respondent Division of Medical Assistance and Health Services (*Mary C. Jacobson,* Assistant Attorney General, and *Michael J. Haas,* Senior Deputy Attorney General, of counsel, *Eileen C. Stokley,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

STERN, J.A.D.

Four hospitals in Sussex and Warren Counties appeal from the promulgation by the Department of Human Services, Division of Medical Assistance and Health Services ("Division"), of regulations regarding hospital rates for patients receiving Medicaid assistance.[1] They complain that they are not included within the "Newark, Suburban" "labor market area" ("LMA"), *N.J.A.C.* 10:52–5.14(d)(3)(v), for purposes of the labor differential equalization adjustment which impacts on the amount of reimbursement. *N.J.A.C.* 10:52–5.1, 10:52–5.14(a). Each LMA constitutes the "counties and municipalities in the State that are grouped in accordance with similar labor costs," *N.J.A.C.* 10:52–1.1, and impacts on the rate adjustment for such costs. Specifically, appellants challenge the validity of *N.J.A.C.* 10:52–5.14(d)(2) and (3), and contend that the use of a separate "Newton–Phillipsburg" LMA, *N.J.A.C.* 10:52–5.14(d)(3)(iii), is arbitrary, capricious and unsupported by the record.

We need not detail the background regarding appellants' challenge to prior regulations and the amendments they now attack. Suffice it to say that in 1992 the United States District Court for the District of New Jersey ruled that the Federal Employee Retirement Income Security Act, 29 *U.S.C.* § 1002 *et seq.* (ERISA), preempted certain aspects of New Jersey's legislative "scheme for regulating hospital rates and the regulations promulgated thereunder" and declared "that New Jersey's hospital rate

---

[1] Appellants are Hackettstown Community Hospital, Newton Memorial Hospital, Wallkill Valley Hospital and Warren Hospital.

setting scheme is unenforceable." *United Wire, Health & Welfare Fund v. Morristown*, 793 *F.Supp.* 524, 526 (D.N.J.1992). Although a divided Third Circuit ultimately reversed the determination under ERISA, 995 *F.*2d 1179 (3d Cir.1993), *cert. denied,* — *U.S.* ——, 114 *S.Ct.* 382, 126 *L.Ed.*2d 332 (1993), our Legislature had in the interim enacted the "Health Care Reform Act of 1992," *L.* 1992, *c.* 160 ("Chapter 160") (repealing and amending portions of *N.J.S.A.* 26:2H, and adopting *N.J.S.A.* 26:2H–18.5 *et seq.* and 43:21–7a *et seq.*) in response to the District Court's decision.[2]

Chapter 160 was enacted on November 30, 1992, and essentially eliminated the former rate setting methodology and permitted hospitals to set their own rates for patients other than Medicare patients (whose rates are set by the federal government) and Medicaid recipients (whose rates are set by the State if the State's Medicaid Assistance Plan complies with federal regulation). As a result of the new legislation, on March 11, 1993, the Division adopted emergency regulations "to establish a rate setting methodology for those Medicaid categorically and optional categorically eligible individuals that require instate inpatient acute care (general) and special (Classification A) hospital care." 25 *N.J.R.* 1582 (April 5, 1993).[3] After the period for review and comment, the regulations were formally adopted, pursuant to the Administrative Procedure Act, with some amendments on May 10, 1993, the date on which the emergency amendments expired, and with some further amendments, on June 7, 1993. *See* 25 *N.J.R.* 2560 (June 7, 1993).[4]

---

[2] There were various effective dates for the different provisions. Given the date of enactment, November 30, 1992, the new rate methodology became effective with the repeal of prior law on January 1, 1993. *See* L. 1992, c. 160, § 42.

[3] "Categorically" eligible individuals include the disabled and dependents of the disabled, 42 *U.S.C.A.* § 1396a(a)(10)(A).

[4] The register reflects that appellants' comments were noted and considered. 25 *N.J.R.* 2561.

The new regulations specifically provided that "[t]he Labor Market areas recognized in 1990 rate setting at N.J.A.C. 8:31B–3.22(d)3 will be used for rate setting in subsequent years." *N.J.A.C.* 10:52–5.14(d)(2). Eleven areas were so designated, including "Newton–Phillipsburg" comprised of Sussex and Warren Counties, *N.J.A.C.* 10:52–5.14(d)(3)(iii), and "Newark, Suburban," comprised of Union, Essex, Somerset and Morris Counties except for certain large urban cities including Newark itself which were placed in the "Newark, Central City" LMA. *See N.J.A.C.* 10:52–5.14(d)(3)(v) and (xi).

Rates are now established by a "cost base" which includes the "reasonable" "direct" and "indirect" "patient care costs," "reasonable physician costs," "net income from other sources," "an economic factor adjustment," a "capital component," and a "technology factor," as developed in the regulations. *N.J.A.C.* 10:52–5.1. The "direct and indirect care costs" are "allocated to the Diagnostic Related Groups (DRGs) and ambulatory services to determine cost per visit for each hospital, and for each patient within the hospital." *N.J.A.C.* 10:52–5.3. The Division's Director develops "standard reimbursement amounts" for each DRG "based on the average cost per case for Medicaid recipients." The standards are adjusted according to different criteria for "significant differences" in LMAs. *N.J.A.C.* 10:52–5.4.

Thus, to account for differing costs in the calculation of rates for Medicaid patients, an adjustment to "standard costs" is made for "economic factors," *N.J.A.C.* 10:52–5.13(a)(1), (b), including "the labor market differentials." *N.J.A.C.* 10:52–5.14(a). Specifically, an "equalization factor" is used "to calculate Statewide standard costs per case" in order to determine the reimbursement rate. *N.J.A.C.* 10:52–5.14(d)(1), (e). The "equalization factor" is defined as "the factor that is calculated based on defined Labor Market Areas and multiplied by hospital costs to permit comparability between differing regional salary costs in setting Statewide standard costs per case." *N.J.A.C.* 10:52–1.1. To determine the "labor equalization factor to calculate Statewide standard costs per

case," an "equalization factor" is calculated "to account for differing hospital pay scales," and "each hospital's equalization factor is determined as non-physician direct patient care costs ... at average pay scales for all New Jersey hospitals" divided by LMA "non-physician direct patient care costs." *N.J.A.C.* 10:52–5.14(d)(1).

The labor reimbursement factor is more beneficial to hospitals in the "Newark, Suburban" LMA than in the "Newton–Phillipsburg" LMA, and appellants contend that as their costs are comparable with those in the former area, they have been wrongly placed in their own LMA.[5] Their appeal to us follows several unsuccessful challenges in the rule making process.

 As appellants recognize, our "scope of judicial review of an administrative rule, regulation, or policy is generally limited to a determination whether that rule is arbitrary, capricious, unreasonable, or beyond the agency's delegated powers." *In re the Amendment of N.J.A.C. 8:31B–3.31*, 119 *N.J.* 531, 543–44, 575 *A.*2d 481 (1990). Regulations are accorded a "presumption of reasonableness," and the party challenging them has the burden of overcoming the presumption. *Bergen Pines County Hosp. v. N.J. Dept. of Human Services*, 96 *N.J.* 456, 477, 476 *A.*2d 784 (1984). *See also Medical Society of New Jersey v. New Jersey Department of Law and Public Safety*, 120 *N.J.* 18, 25, 575 *A.*2d 1348 (1990) ("[a]n agency rule or regulation is presumptively valid"); *Monmouth Medical Center v. State Department of Health*, 272 *N.J.Super.* 297, 312, 639 *A.*2d 1129 (App.Div.1994) ("[t]o overcome th[e] presumption, a party challenging a regulation must show that it is unreasonable"). Moreover, administrative agencies have "wide discretion in selecting the means to fulfill the duties that the Legislature delegated to them" and "[c]ourts normally defer to that choice so long as the selection is responsive to the purpose

---

[5] If "the number of hospitals in a given labor market area decreases to a number less than four," there may be a merger of that LMA with a geographically contiguous LMA. *N.J.A.C.* 10:52–5.14(d)(8).

and function of the agency." *Texter v. Department of Human Services,* 88 *N.J.* 376, 383, 385–86, 443 *A.2d* 178 (1982).

Appellants have not met their burden. They contend that the Division acted arbitrarily and capriciously because it made no record justifying the decision to utilize the then-existing LMAs when adopting the new regulations, and did not adequately react to their objections. However "[f]acts sufficient to justify the regulation must be presumed. The burden is not upon the Commissioner to establish that the requisite facts exist. Rather, the burden is on the petitioners to establish that they do not." *Consolidation Coal Co. v. Kandle,* 105 *N.J.Super.* 104, 114, 251 *A.2d* 295 (App.Div.), *aff'd o.b.,* 54 *N.J.* 11, 252 *A.2d* 403 (1969). Moreover,

> an administrative agency is not obligated to hold a hearing on proposed regulations before adopting them. The Administrative Procedures Act does provide for timely opportunity to submit data and argument (here provided), but does not require a formal public evidentiary hearing as part of the rule-making process. . . . Nor are findings, sufficient to justify the regulations, a required part of the same process.
>
> [*Heir v. Degnan,* 82 *N.J.* 109, 119, 411 *A.2d* 194 (1980).]

In addition, there is no evidence in the record before us reflecting the impact on hospitals in other LMAs, and particularly the "Newark, Suburban" area, if appellants' contentions are accepted.

Appellants contend that the hospitals should have used the Medicare regional designations for Medicaid purposes. However, unlike the Medicare program, which is solely a federal program whose regions cross state lines, Medicaid is a plan voluntarily undertaken by the States which must comply with federal regulations in order to obtain federal funding to provide medical assistance for needy persons. *See* 42 *U.S.C.A.* § 1396a; *N.J.S.A.* 30:4D–1 *et seq. See also Monmouth Medical Center v. State of New Jersey,* 158 *N.J.Super.* 241, 247–48, 385 *A.2d* 1244 (App.Div. 1978), *aff'd,* 80 *N.J.* 299, 403 *A.2d* 487 (1979). "The program is primarily administered by the State, subject to federal guidelines and constraints," and "[e]ach participating State is required to adopt a plan," subject to federal approval. *Id.,* 80 *N.J.* at 302–3, 403 *A.2d* 487.

■ Under New Jersey law, the Division is expressly authorized to promulgate rules and regulations necessary to maximize federal assistance and, among other things, to establish Medicaid reimbursement rates consistent with federal law, rules and regulations, *N.J.S.A.* 30:4D–7(b), and we can find no obligation on the part of the Division to utilize any component of the Medicare rate methodology with respect to the Medicaid program. Rather, the States must adopt regulations to establish State Medical Assistance (Medicaid) rates based on "reasonable and adequate" costs for "efficiently and economically operated facilities" in conformity with applicable state and federal law and standards. 42 *U.S.C.A.* § 1396a(a)(13)(A).

■ Significantly, the regulations under attack essentially permit appellants to challenge the impact of their LMA designation as part of the rate adjudication process. The packages containing the emergency regulations and subsequent formal promulgation include a procedure for the "review and appeal of rates." *N.J.A.C.* 10:52–9.1. On this appeal, appellants have made no showing that they have actually sustained "a marginal loss in providing inpatient services to Medicaid recipients" at the existing rates, or that they have "taken all reasonable steps to contain or reduce the costs of providing inpatient hospital services," factors which might entitle them to relief in the adjudicatory process. *N.J.A.C.* 10:52–9.1(b)(2). In any event, the regulations expressly permit the hospitals to make such a showing in an adjudicatory context in order to seek a rate increase, *N.J.A.C.* 10:52–9.1(b)(2), and the impact of a particular hospital's LMA may be relevant to such a showing. Thus, the adjudicatory process is available if the rates become confiscatory or do not permit a fair rate of return. *Cf. State Farm v. State,* 124 *N.J.* 32, 63, 590 *A.*2d 191 (1991).

■ An administrative agency has broad discretion to exercise its statutory authority "either by adjudication or rulemaking," and enjoys "a great deal of flexibility in selecting the proceedings most likely to achieve their regulatory aims." *State of New Jersey, Department of Environmental Protection v. Stavola,* 103

*N.J.* 425, 436–37, 511 *A.*2d 622 (1986). *See also Monmouth Medical Center, supra,* 272 *N.J.Super.* at 312, 639 *A.*2d 1129 ("an administrative agency ordinarily possesses extremely broad authority in determining whether to act through rule-making or adjudication"). We must defer to the procedure utilized by the agency in implementing legislative policy "so long as the selection is responsive to the purpose and function of the agency." *Radiological Society of New Jersey v. New Jersey State Department of Health,* 208 *N.J.Super.* 548, 560, 506 *A.*2d 755 (App.Div.), *certif. denied,* 104 *N.J.* 444, 517 *A.*2d 434 (1986). Particularly, given the emergent nature of the situation affecting the rate system at the time the amended regulations were promulgated in response to the federal District Court decision, and the fact that issues addressed to the fairness of the specific reimbursement rates for each hospital can be addressed in the adjudicatory context, we cannot conclude that the Division acted arbitrarily or unlawfully in using the then-existing LMAs when promulgating the amended regulations.

Affirmed.