991 A.2d 243 (2010)
412 N.J. Super. 406
Miriam GONZALEZ, Plaintiff-Appellant,
v.
NEW JERSEY PROPERTY LIABILITY INSURANCE GUARANTY ASSOCIATION, National Arbitration Forum, and New Jersey Department of Banking and Insurance, Defendants-Respondents.
A-1298-07T2
Superior Court of New Jersey, Appellate Division.
Argued September 14, 2009.
Decided March 25, 2010.
*245 S. Gregory Moscaritolo, River Edge, argued the cause for appellant (Roberts & Moscaritolo, LLC, attorneys; Mr. Moscaritolo, on the brief).
Arthur J. Timins, Roseland, argued the cause for respondent National Arbitration Forum (Shiriak & Timins, attorneys; Mr. Timins, of counsel and on the brief).
William B. Puskas, Jr., Deputy Attorney General, argued the cause for respondent Commissioner of Banking and Insurance (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Deputy Attorney General, of counsel; Paul G. Witko, Deputy Attorney General, on the brief).
Dennis S. Brotman, Lawrenceville, argued the cause for amicus curiae Association of Trial Lawyers of America-New Jersey (Fox Rothschild LLP, attorneys; Mr. Brotman, of counsel; Patricia Barron, on the brief).
Respondent New Jersey Property Liability Insurance Guaranty Association did not file a brief.
Before Judges LISA, BAXTER, and ALVAREZ.
The opinion of the court was delivered by
ALVAREZ, J.A.D.
In this appeal, we consider the validity of the National Arbitration Forum's *246 (NAF) Rule 4.[1] The rule requires a person injured in an automobile accident to demonstrate "immediate and irreparable loss or damage" when seeking emergent medical services disputed by a personal injury protection (PIP) insurer. Plaintiff Miriam Gonzalez contends that the approval of Rule 4 by defendant, the Commissioner of the Department of Banking and Insurance (Commissioner): (1) violated the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -25, because the approval amended a regulation without compliance with the APA; (2) was ultra vires; (3) imposed additional eligibility requirements on PIP claimants in violation of public policy; (4) contravened the authority of NAF dispute resolution professionals (DRP) deciding emergent cases; and (5) violated equal protection under the state and federal constitutions. We find no merit to these claims and affirm the Commissioner's approval of NAF Rule 4.
On February 26, 2005, while crossing a street, plaintiff was struck by a motor vehicle, sustaining serious disabling injuries to her neck, back, and right shoulder.[2] Plaintiff alleges that after the accident her pain progressed to the extent that it interfered with her normal day-to-day functioning and disabled her from employment. On August 10, 2005, she underwent surgery on her right shoulder, which did not alleviate the problem. Multiple epidural nerve blocks were administered, but they too were ineffective.
PLIGA referred plaintiff to a pain management specialist, who recommended cervical spine surgery and, in turn, referred plaintiff to a neurosurgeon. After additional evaluation, the neurosurgeon, Frank Moore, M.D., proposed to perform "an anterior cervical diskectomy, fusion and instrumentation at C4-5 and C5-6." At PLIGA's request, William Foxall Cunningham, M.D. conducted an independent medical examination on May 10, 2007. He opined that the surgery was unwarranted and the injuries were unrelated to the automobile accident. Consequently, PLIGA refused to pay for plaintiff's surgery.
On July 16, 2007, after a hearing, the DRP denied plaintiff's request for emergent relief, made pursuant to N.J.S.A. 39:6A-5.1. Applying the Rule 4 standard, the DRP concluded that "[t]here was no testimony o[r] evidence produced that demonstrated an immediate and irreparable harm if the surgery was not performed immediately." This litigation followed.
Plaintiff's Law Division complaint, filed on July 20, 2007, sought to enjoin NAF's application of the Rule 4 requirement that a claimant establish "immediate and irreparable loss" before emergent relief is granted. Plaintiff also sought a determination that the rule violated N.J.A.C. 11:3-5.4(b)(3).[3] The court heard final arguments on September 20, 2007, by which time plaintiff's second NAF hearing had been scheduled. Because no decision had been made, however, the Law Division *247 judge dismissed the case as not ripe for adjudication.
On September 28, 2007, the DRP denied plaintiff's request for modification of the prior order denying emergent relief. In support of the request, plaintiff had asserted changed circumstances including a brief psychiatric hospitalization for depression due to her injuries.[4]
On October 17, 2007, plaintiff's case was heard by the same DRP on the standard non-emergent calendar. Confronted with conflicting medical opinions, the DRP determined that Moore's testimony was more credible and found that the surgery was "medically necessary, reasonable and causally related to the [automobile] accident." See N.J.S.A. 39:6A-16. On November 13, 2007, plaintiff appealed the dismissal of her complaint. Plaintiff underwent surgery in December 2007, and, according to her attorney, her condition has since improved.

I.
The New Jersey Automobile Reparation Reform Act (the Act), also known as the "No Fault Act," ensures that persons injured in automobile accidents receive medical and wage replacement benefits regardless of fault. N.J.S.A. 39:6A-1 and 39:6A-1.1b. The Act is to be given a liberal construction. N.J.S.A. 39:6A-16. The Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, adopted in 1998, amended the Act in order "to preserve the no-fault system" of benefits to residents injured in automobile accidents, "while at the same time reducing unnecessary costs which drive premiums higher." N.J.S.A. 39:6A-1.1b.
AICRA also required revision of the existing dispute resolution process in order to meet the legislative goal of "eliminating payment for treatments and diagnostic tests which are not medically necessary." Ibid. N.J.S.A. 39:6A-5.1b states that:
The Commissioner of Banking and Insurance shall designate an organization,... for the purpose of administering dispute resolution proceedings regarding medical expense benefits and other benefits provided under personal injury protection. ... The commissioner shall promulgate rules and regulations with respect to the conduct of the dispute resolution proceedings. ... The organization shall establish a dispute resolution plan, which shall include procedures and rules governing the dispute resolution process and provisions for monitoring the dispute resolution process to ensure adherence to the standards of performance established by the commissioner. The plan, and any amendments thereto, shall be subject to the approval of the commissioner.
In response, the Commissioner promulgated dispute resolution regulations, N.J.A.C. 11:3-5.1 to -5.12, which included the conduct of PIP dispute resolution proceedings, N.J.A.C. 11:3-5.6. In 2004, NAF replaced the American Arbitration Association (AAA), which had served as the designated DRO from 1998 to 2003.
In accordance with N.J.A.C. 11:3-5.4(b), the Commissioner instructed the designated DRO to develop a dispute resolution plan containing its rules and procedures, subject to the Commissioner's approval. The plan was to "provide the assigned dispute resolution professional with sufficient authority to provide all relief and to determine all claims arising under PIP coverage, but may provide for limited, procedural or emergent matters to be determined *248 by one or more specially designated dispute resolution professionals." N.J.A.C. 11:3-5.4(b)(3). Additionally, the DRO was required to "promote fair, efficient and consistent determinations consistent with substantive law and with rules adopted by the Commissioner." N.J.A.C. 11:3-5.4(a)(8).
When AAA was the DRO, the Commissioner approved the following provision regarding applications for emergent relief:
If after consideration the DRP is satisfied that the party seeking the emergent relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the DRP may within three days, enter an award granting the relief and stating the reasons therefor with findings of fact and conclusions of law.
[American Arbitration Association Rule 3a.]
NAF's own set of rules includes Rule 4, which contains language almost identical to AAA's Rule 3a:
If after consideration the DRP is satisfied that the party seeking the emergent relief has shown that immediate and irreparable loss or damage will result in the absence of emergency relief, and that such party is entitled to such relief, the DRP may within three (3) business days, enter an award granting the relief and stating the reasons therefor with findings of fact and conclusions of law.
[New Jersey No-Fault Automobile Arbitration Rules, Rule 4.]
The Commissioner approved the NAF rules, including Rule 4, on March 23, 2004.
According to NAF's then vice president, Joseph Di Donato, during 2007 only fifty-six requests were filed seeking Rule 4 expedited hearings. Di Donato stated that in thirty-four percent of those cases, the claimants demonstrated "immediate and irreparable loss," and another twenty-one percent of the cases settled. Thus, according to Di Donato's calculations, more than half of the reported requests were either granted or settled. The remaining cases were either withdrawn or denied.

II.
We first address the Commissioner's contention that this appeal is moot because plaintiff's surgery was ultimately approved, and the legitimacy of Rule 4 is neither an issue of "substantial public importance" nor likely to frequently recur. "[We] will not render advisory opinions or function in the abstract." Indep. Realty Co. v. Twp. of N. Bergen, 376 N.J.Super. 295, 301, 870 A.2d 637 (App.Div.2005) (citing Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107, 275 A.2d 433 (1971)). If an "underlying issue is one of substantial importance and is capable of repetition while evading review," however, we will decide an appeal in spite of factors that render it otherwise moot. Caput Mortuum, L.L.C. v. S & S Crown Servs., Ltd., 366 N.J.Super. 323, 330, 841 A.2d 430 (App.Div.2004). See also In re Geraghty, 68 N.J. 209, 212, 343 A.2d 737 (1975) (finding that "courts may hear and decide cases which are technically moot where issues of great public importance are involved").
Plaintiff relies on Brady v. Department of Personnel, 149 N.J. 244, 693 A.2d 466 (1997), in support of the proposition that the validity of Rule 4 is sufficiently important to warrant judicial review even though the underlying dispute is moot. In Brady, a police officer demanded greater access to his civil service examination results so that he might challenge the test outcome. Id. at 249, 693 A.2d 466. He had already obtained the materials pursuant to our order, however, the Court determined that while the controversy was *249 "technically moot," the issue warranted review because of its importance and the potential impact upon the many who sit for civil service exams. Id. at 253, 693 A.2d 466.
Obviously, this plaintiff is not entitled to affirmative relief as she has already undergone surgery paid for by PIP. Nonetheless, because Rule 4 applies to those injured in automobile accidents who seek emergent relief despite an insurer's refusal to pay for the cost, an issue of significant public importance remains.
The final determination of a DRP may be appealed to the Superior Court under N.J.S.A. 2A:23A-13 and N.J.A.C. 11:3-5.6(f). Following denial of emergent relief, however, a claimant's case, as happened here, moves to the standard track for a final hearing. So long as that final hearing date is pending, no appealable determination will have been made pursuant to N.J.A.C. 11:3-5.6(f). If a claimant is granted the requested relief in a final hearing, as in this case, questions that arose during the emergent hearing process become moot. This issue is one of public importance, capable of recurrence, and likely to continue evading review. Hence we will entertain plaintiff's appeal.

III.
Plaintiff asserts that an amendment to an AICRA regulation, N.J.A.C. 11:3-5.4, without adherence to the formal rule-making process of the APA renders the amendment unlawful. The Association of Trial Lawyers of America-New Jersey (ATLA), in its capacity as amicus curiae, joins in this argument. NAF points out that because Rule 4 was not promulgated by an agency, the APA does not apply, and that Rule 4 does not meet the threshold at which formal rule-making is required. The Commissioner argues that approval of the emergent relief standard in the NAF dispute resolution plan, as opposed to formal adoption and inclusion in N.J.A.C. 11:3-5.4, was within its broad discretion. The Commissioner further argues that Rule 4 does not meet the criteria requiring formal rule-making. We agree with the Commissioner.[5]
An agency is afforded considerable discretion in choosing the method by which it fulfills its legislatively delegated duties. In re Adoption of N.J.A.C. 10:52-5.14(d)(2) and (3), 276 N.J.Super. 568, 574-75, 648 A.2d 509 (App.Div.1994), certif. denied, 142 N.J. 448, 663 A.2d 1355 (1995). Such decisions will generally be upheld so long as they advance the agency's purpose and function. Ibid. An agency's administrative regulations are presumed valid, thereby limiting a court's regulatory review. Lewis v. Catastrophic Illness in Children Relief Fund, 336 N.J.Super. 361, 369, 764 A.2d 1035 (App.Div.), certif. denied, 168 N.J. 290, 773 A.2d 1154 (2001).
Although any regulation exceeding the agency's grant of authority from the Legislature is considered ultra vires, such a finding "is strongly disfavored, and is made only in exceptional circumstances." In re Route 206 at New Amwell Rd., 322 N.J.Super. 345, 352, 731 A.2d 56 (App. Div.), certif. denied, 162 N.J. 197, 743 A.2d 849 (1999). Nevertheless, if an agency's action contravenes its enabling statute, the courts will intervene. N.J. Ass'n of Realtors v. N.J. Dep't of Envtl. Prot., 367 N.J.Super. 154, 160, 842 A.2d 262 (App.Div.2004).
*250 The APA defines an administrative rule as an "agency statement of general applicability and continuing effect that implements or interprets law or policy, or describes the organization, procedure or practice requirements of any agency." N.J.S.A. 52:14B-2(e). In Metromedia, Inc. v. Director, Division of Taxation, 97 N.J. 313, 331-32, 478 A.2d 742 (1984), the Court established criteria for determining whether a particular agency determination should be subject to formal rule-making. These criteria, which can be considered singly or in combination, include when the agency determination:
(1) is intended to have wide coverage encompassing a large segment of the regulated or general public, rather than an individual or a narrow select group; (2) is intended to be applied generally and uniformly to all similarly situated persons; (3) is designed to operate only in future cases, that is, prospectively; (4) prescribes a legal standard or directive that is not otherwise expressly provided by or clearly and obviously inferable from the enabling statutory authorization; (5) reflects an administrative policy that (i) was not previously expressed in any official and explicit agency determination, adjudication or rule, or (ii) constitutes a material and significant change from a clear, past agency position on the identical subject matter; and (6) reflects a decision on administrative regulatory policy in the nature of the interpretation of law or general policy.
[Ibid.]
Applying the Metromedia factors, we note that Rule 4 is applicable only to that narrow class of prospective PIP beneficiaries who request emergent relief, and does not apply to a large segment of the general public. Thus, the first Metromedia factor supports the conclusion that Rule 4 is not an administrative rule requiring compliance with the APA. As to the second Metromedia factor, Rule 4 is intended to be applied uniformly to all applicants for emergent relief, and thus supports plaintiff's position. The third Metromedia factor requires an analysis of whether the rule in question is designed to operate only prospectively. Here, although intended to be applicable to all future cases, Rule 4 merely restates a rule that had already been in existence for five years, and was thus not purely prospective in its application.
The fourth criterion appears to lean in favor of formal rule-making because Rule 4 could constitute a legal standard not expressly found in the enabling statute or regulations. But, it is possible to infer that the requirement of immediate and irreparable harm was contemplated by the governing legal provisions. N.J.S.A. 39:6A-5.1(b) authorizes the DRO to establish procedures and rules for dispute resolution subject to the Commissioner's approval, and the resulting regulations require the DRO to make provisions for emergent relief. See N.J.A.C. 11:3-5.4(b)(3). Furthermore, as the Commissioner points out, the Rule 4 emergent relief standard is the same as that utilized in civil litigation and in prior PIP arbitrations when AAA was the DRO. See R. 4:52-1(a); R. 4:67-2(a). It is possible to infer that use of the term "emergent" in the authorizing regulations implied the Rule 4 standard.
Under the fifth Metromedia criterion, as has already been stated, Rule 4 mirrored AAA's earlier rule and was not a material change in the agency's position on emergent relief arbitration. Finally, under the sixth criterion, the adoption of Rule 4 was not an interpretation of a law or general policy. Tested against the Metromedia criteria, we conclude that Rule 4 should *251 not be subject to formal rule-making procedures.

IV.
Plaintiff contends that the Commissioner's approval of Rule 4 was ultra vires because such approval: (1) is inconsistent with the authorizing regulation under AICRA, specifically N.J.A.C. 11:3-5.4(b)(3), and contravenes the legislative policies of the Act, including N.J.S.A. 39:6A-16; and (2) disregards the emergency care provisions set forth in N.J.A.C. 11:3-4.2 and -4.7(b). ATLA also contends that DOBI "violated its statutory and regulatory proscriptions in allowing NAF to adopt Rule 4," thus making Rule 4 void.
Plaintiff further asserts that N.J.A.C. 11:3-5.4(b)(3), the emergent filings AICRA regulation, is inconsistent with Rule 4. Plaintiff characterizes Rule 4 as an unauthorized amendment to AICRA.
N.J.S.A. 39:6A-5.1b vested the obligation in the DRO to establish a dispute resolution plan, including all necessary procedures and rules. N.J.A.C. 11:3-5.4(b)(3) states that the plan:
... shall provide the assigned [DRP] with sufficient authority to provide all relief and to determine all claims arising under PIP coverage, but may provide for limited, procedural or emergent matters to be determined by one or more specially designated dispute resolution professionals.
Emergent applications are thereby specifically authorized, although no process is described. In the most literal sense, NAF's dispute resolution plan, including Rule 4, is not inconsistent with the Act or with the relevant regulations. Rule 4 merely expresses the standard of review for such applications, a step which puts affected litigants on notice of the requirements for emergent relief. The DRO's inclusion of Rule 4 in its dispute resolution plan merely filled a procedural void.
Plaintiff's argument focuses on the Act's stated purpose of ensuring that New Jersey residents injured in automobile accidents receive medical benefits regardless of fault, see N.J.S.A. 39:6A-1.1b, and on the legislative requirement that the Act be liberally construed, see N.J.S.A. 39:6A-16. Despite that expression of intent, however, the Legislature did impose limits on recovery. For example, under N.J.S.A. 39:6A-4a, PIP coverage is defined as "[p]ayment of medical expense benefits ... for reasonable, necessary, and appropriate treatment and provision of services to persons sustaining bodily injury, in an amount not to exceed $250,000 per person per accident." See also Elkins v. N.J. Mfrs. Ins. Co., 244 N.J.Super. 695, 700, 583 A.2d 409 (App. Div.1990) (finding "medical expenses must be both reasonable and necessary" to be compensable, and unjustified expenses may subvert the purpose of the Act). The Legislature obviously did not intend that all persons claiming PIP benefits would do so without regard to economic realities. See N.J.S.A. 39:6A-1.1b.
In fact, AICRA was promulgated because the no-fault system was not effectively maximizing benefits while reducing the cost of insurance. Ibid. The Act's arbitration system was not functioning as the Legislature intended. Ibid. AICRA was designed precisely to reform the system so as to reduce unnecessary costs, which drive premiums higher. Ibid.
AICRA revamped the no-fault system by eliminating payments for unnecessary medical treatment and tests. Ibid. In furtherance of that legislative goal, the Commissioner enacted regulations implementing the emergent relief process and requiring that the DRO's decisions be consistent and issue in accordance with all applicable law and rules. N.J.A.C. 11:3-5.4(a)(8) *252 and (b)(3). Viewed in that light, Rule 4 is entirely consistent with AICRA's underlying purpose of providing benefits while reducing costs. It merely establishes the means by which insureds and insurers can quickly address conflicts regarding emergent medical needs not otherwise addressed in the statutory scheme. It is therefore not ultra vires.

V.
Plaintiff also asserts that Rule 4 conflicts with the emergency care requirements of N.J.A.C. 11:3-4.2 and -4.7(b), and improperly imposes an additional eligibility requirement on claimants seeking PIP benefits. For the purposes of PIP coverage, emergency care is defined as "all medically necessary treatment of a traumatic injury or a medical condition manifesting itself by acute symptoms of sufficient severity such that absence of immediate attention could reasonably be expected to result in: death; serious impairment to bodily functions; or serious dysfunction of a bodily organ or part." N.J.A.C. 11:3-4.2. N.J.A.C. 11:3-4.7(b) provides that adherence to a decision point review plan (the insurer's plan designating points at which treatment and testing decisions are to be made, N.J.A.C. 11:3-4.2) is not required when treatment occurs within ten days of an accident or is for emergency care.
Emergency care, as defined in N.J.A.C. 11:3-4.2, is necessitated by an injury or condition that, absent immediate attention, will result in irreparable harm such as death, serious impairment or dysfunction of bodily functions, organs, or parts. Rule 4's requirement that an applicant for emergent relief demonstrate "immediate and irreparable loss or damage" is consistent with that definition. When a PIP claimant is able to demonstrate the need for emergency care, N.J.A.C. 11:3-4.7(b) provides that a decision point review plan is unnecessary. Therefore, Rule 4 is not inconsistent with emergency care regulations.

VI.
We turn next to the question of whether Rule 4 improperly interferes with a DRP's authority to decide all questions of law and fact presented. N.J.A.C. 11:3-5.6(d) requires that a DRP make findings and reach conclusions that comply with substantive law, and with "the provisions of the policy and the Department's rules." See N.J.S.A. 39:6A-5.1b; N.J.A.C. 11:3-5.4(b). In our view, Rule 4 only provides the framework for determination of which applications are truly emergent and should be expedited, or, even where medically necessary, which should be relegated to the standard arbitration track because the claimant will not suffer any "immediate or irreparable loss or damage." Having an analytical framework does not take away from a tribunal's statutorily mandated authority.
Plaintiff urges us to invalidate Rule 4 under the authority of State Farm Mutual Automobile Insurance Co. v. Molino, 289 N.J.Super. 406, 674 A.2d 189 (App.Div. 1996). In Molino, we found that an insurer's denial of PIP benefits created a dispute that "triggered [the claimant's] right to demand binding arbitration." Id. at 408, 674 A.2d 189. We noted that a DRP is required to decide both legal and factual issues in dispute resolution, guided by case law and statute. Id. at 411, 674 A.2d 189. It does not follow, however, that this precludes a DRP from being subject to guidelines that serve to frame his or her application of the law to the facts. Given the statutory mandate that a DRO establish a dispute resolution plan, N.J.S.A. 39:6A-5.1b, the Legislature must have intended that implementing guidelines be created.
*253 Plaintiff urges, as an alternative, that DRPs be permitted to select the legal standard to be employed in each emergent case. Thus, the DRP would merely apply the facts to the statutory definition of emergency care found in N.J.A.C. 11:3-25.2 and AICRA's stated purpose of providing maximum protection for accident victims in an efficient manner. "Emergency care" as defined in N.J.A.C. 11:3-25.2 is the equivalent of the current Rule 4 standard. "Emergency care" means all necessary treatment "such that absence of immediate attention could reasonably be expected to result in: death; serious impairment to bodily functions; or serious dysfunction of a bodily organ or part."
Plaintiff further proposes that "[e]vidence that a claimant will likely suffer additional permanency and restriction of daily activities[] if the surgery is not performed promptly should satisfy the NAF rule requirement." The restriction of daily activities is, in our view, an unwarranted lessening of the Rule 4 requirement that the medical need be truly emergent. The remaining portion, that additional permanent injury may result without prompt treatment, is no different than requiring a claimant to demonstrate the potential for "immediate and irreparable loss or damage." These alternatives are not acceptable.
Plaintiff's other suggestion, that DRPs decide emergent claims based on whether the requested relief would alleviate the applicant's pain and suffering, too closely equates emergent relief with treatment that is "medically necessary," N.J.A.C. 11:3-4.2, or "medically indicated treatment," N.J.A.C. 15A:3-2.2. This suggested standard improperly blurs the distinction between medical care that may be necessary in the future and medical care that is immediately required.
For decades, New Jersey courts have applied a similar "immediate and irreparable harm" standard in determining whether to grant applications for emergent relief. To obtain an order for temporary restraints, a plaintiff must demonstrate that irreparable harm will result if emergent relief is not granted. Crowe v. De Gioia, 90 N.J. 126, 132, 447 A.2d 173 (1982) (noting that courts have long granted temporary relief to prevent irreparable harm). See also R. 4:52-1 and R. 4:67-2. Thus, the Rule 4 standard is, for all practical purposes, within the vernacular of every lawyer in this state in cases raising entitlement to emergent relief.
Plaintiff has not proffered a more suitable standard than Rule 4; nor has she shown that Rule 4 in any way undermines the authority of the DRPs to make findings and conclusions of law and fact. Rule 4 complies with the standards used in similar cases, provides the DRPs with an appropriate method for distinguishing cases requiring emergent relief from those that simply require medical treatment at some future point in time, and ensures consistency in determinations as required by N.J.A.C. 11:3-5.4(a)(8).

VII.
Plaintiff asserts that Rule 4 imposes an additional eligibility requirement not found in the statute. She relies upon Hermann v. Rutgers Casualty Insurance Co., 221 N.J.Super. 162, 167, 534 A.2d 51 (App.Div.1987), for the proposition that an insurer cannot include in its policy an exclusion that is not found in the PIP statute. Hermann is distinguishable from the present circumstances as Rule 4 is neither an insurance policy exclusion nor an additional eligibility requirement. It is merely a decisional framework, approved by the Commissioner, for DRPs.
*254 Plaintiff further contends that Rule 4's requirement that applicants submit an affidavit explaining the nature of the emergent need and the requested relief is sufficient to separate the matter from standard track cases, and that any inquiry beyond that should be limited to the medical necessity of the treatment. This argument too is unavailing. The "immediate and irreparable loss or damage" portion of Rule 4 assists the DRP in determining which cases are truly emergent while advancing AICRA's legislative policy. It gives claimants notice of the level of proof they must provide to establish that their medical need is truly emergent. Eliminating that standard from Rule 4 has the potential to cause inconsistent results, thereby undermining AICRA's goal of fair but efficient provision of benefits.

VIII.
Plaintiff's final point is that Rule 4 does not serve a legitimate state interest, and that it "targets a select class of claimants injured in automobile accidents." She contends that all of the rules included in the NAF plan are procedural with the exception of Rule 4, and that Rule 4 imposes a threshold for receiving benefits, which "violates the substantive due process rights of every PIP claimant in New Jersey." Similarly, ATLA contends that Rule 4 is an unconstitutional delegation of authority under article IV, section 1, paragraph 1 of the New Jersey Constitution. It argues that DOBI improperly delegated its regulatory authority to NAF, thereby rendering Rule 4 invalid.
Rule 4 did not result in plaintiff receiving disparate treatment compared to other PIP claimants. Although she did not meet the Rule 4 standard for emergent relief, her request for surgery was ultimately approved following a standard track PIP arbitration hearing. In fact, if, as plaintiff proposes, DRPs were left to establish their own standards for emergent relief, it is possible that claimants would receive significantly different results depending on the DRP hearing the case; they would be more likely to suffer disparate treatment in the absence of a definitive standard. We consider the equal protection argument to not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).
Affirmed.
NOTES
[1] Rule 4, which is found in NAF's New Jersey No-Fault Arbitration Rules, has since been renumbered as Rule 9. Because in the briefs and at oral argument all references were to Rule 4, we retain the usage.
[2] Plaintiff's claims against the driver of the automobile and the New Jersey Property-Liability Insurance Guaranty Association (PLIGA) for PIP coverage are being pursued in separate litigation.
[3] "[T]he [DRO] shall develop and maintain a [DRP dispute resolution plan] approved by the Commissioner that sets forth its procedures and rules. ... The plan ... may provide for limited, procedural or emergent matters to be determined by one or more specially designated [DRPs]. ..."
[4] Plaintiff was admitted on the recommendation of the licensed psychologist who evaluated her relative to her Social Security disability claim.
[5] We further note that the Department of Banking and Insurance (DOBI) is considering the adoption of an amendment to N.J.A.C. 11:3-5.4(b)3 to incorporate the "`immediate and irreparable harm' standard ... in effect for many years." Public comment on the proposal closed on September 4, 2009.